STATE OF CONNECTICUT *v.* JUAN CORCHADO
(12603)

PETERS, C. J., HEALEY, SHEA, DANNEHY and SANTANIELLO, Js.

Argued May 6—decision released July 15, 1986

*Robert A. Lacobelle,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellant (state).

*Francis T. Mandanici,* special public defender, for the appellee (defendant).

ARTHUR H. HEALEY, J. On May 28, 1980, the defendant Juan Corchado was convicted after a jury trial of the crime of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1), which arose out of a shooting in Bridgeport in 1979. A sentence of not less than five years nor more than ten years was imposed. On February 25, 1981, he appealed his conviction. On December 14, 1982, this court reversed his conviction because of error in the jury instructions on the law of self-defense and ordered a new trial. *State* v. *Corchado,* 188 Conn. 653, 669, 453 A.2d 427 (1982). By December 14, 1982, the defendant had already been released from prison and was on parole. On May 31, 1984, the board of parole voted to "discharge [him] from further parole supervision and

thereby terminate[d] [his] sentence." Prior to the start of a second trial, the defendant filed a "Motion to Note Nolle or Dismiss." On September 20, 1984, the court, *Curran, J.*, held a hearing on the defendant's motion, which the state opposed, and granted the motion to dismiss with prejudice. On that date, the court granted the state's request for permission to appeal the granting of the motion.

The sole issue presented on appeal is whether the trial court erred in granting the defendant's motion to dismiss. We find no error.

In addition to the circumstances already set out, the defendant's motion[1] alleged that even if he were to be

---

[1] "Pursuant to Conn. Gen. Stat., Sec. 54-142a (c), the Defendant's rights to due process, to a fair trial, to the equal protection of the laws, to a speedy trial, to present witnesses, against cruel and unusual punishment, as guaranteed by Article One, Sections Eight and Nine of the Connecticut Constitution, and the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, the Defendant moves the Court to note a nolle and or to enter a dismissal in this case because his above rights have been violated due to the following facts:

"(1) He was arrested for the present matter on November 17, 1979 and almost 5 years have passed since that arrest.

"(2) He was convicted of the offense on May 28, 1980 and received a sentence of five to ten years to serve.

"(3) On December 14, 1982, the Connecticut Supreme Court overturned his conviction because the jury instruction as requested by the State and given by the trial court, was unconstitutional in that it stated the Defendant had to be 'without fault' to raise self defense.

"(4) The Defendant has completely served his sentence and was discharged on parole in June, 1984.

"(5) The Court, even if the Defendant were to be reconvicted, could not give the Defendant any more time, nor put him on probation nor fine him. Any sentence the Court could give has already been served, even to the extent that there could be no parole violation because the Defendant could no longer be put on parole.

"(6) The Defendant has no other criminal record other than the present matter.

"(7) Subsequent to the appellate reversal, on September 21, 1983 and December 19, 1983, the Defendant was ordered to Court to start his trial and appeared with counsel in Court on both occasions prepared to start trial.

reconvicted, he could not be sentenced to any additional incarceration nor could he be placed on probation or fined because any sentence that could be imposed had already been executed. The defendant's motion also alleged that on September 21, 1983, and December 19, 1983, following our decision reversing his 1980 conviction, he had twice been ordered to court to start trial and had appeared in court on both occasions prepared to start trial. His motion further stated that a retrial would prejudice him because his key witness, Luz Bosco, whose testimony was crucial to his self-defense claim, could not be located due to the passage of time. See *State* v. *Corchado,* supra, 654–56. It also asserted that a retrial would serve no legitimate state interest and would unjustly add to the full punishment that he had already undergone. The motion urged finally that a dismissal should be granted "based on [the trial court's] supervisory powers and in the interest of judicial economy."

The state argues, citing *State* v. *Villafane,* 164 Conn. 637, 641, 325 A.2d 251 (1973), that the trial court's conclusions cannot stand because they "are legally or logically inconsistent with the facts found or . . . they involve the application of some erroneous rule of law

"(8) It has been almost 5 years since the Defendant's arrest and almost 2 years since the reversal of his conviction.

"(9) Any retrial would serve no legitimate state interest and would only be a waste of judicial resources. The Defendant has no intention of suing the State and or its agents if the charges are nolled and dismissed.

"(10) Any retrial would be prejudicial to the Defendant because his key witness, Luz Bosco, due to the passage of time (4 years), can not be located. Her testimony is crucial to his defense as evidenced by the appellate decision and the trial transcript which shows that she substantiates his self defense claim.

"(11) The Defendant has already been fully punished as if he committed the offense, and forcing him to endure another trial would unjustly add to that punishment he already received.

"In addition to the above constitutional reasons for entering a dismissal, the Court should dismiss the case based on its supervisory powers and in the interest of judicial economy."

material to the case." The state does concede, however, that the defendant has served his sentence and has been discharged from parole. It also concedes that if the defendant were reconvicted after a new trial, the sentence to be imposed would have to be restricted to the sentence that had been imposed at the time of the earlier conviction, unless a harsher sentence would be justified on the basis of some conduct of the defendant after the original sentencing. See *North Carolina* v. *Pearce,* 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), and its progeny. The state did not maintain in the trial court, and does not maintain now, that it had available to it any information suggesting conduct by the defendant that would furnish a basis for a harsher sentence.

In resisting the defendant's motion, the state also asserts that the interests of the state and society in the prosecution of serious felony matters such as manslaughter go far beyond "the mere imposition and serving of a prison sentence." Drawing heavily upon *Fitzgerald* v. *United States,* 472 A.2d 52, 54 (D.C. App. 1984), a double jeopardy case,[2] the state claims that significant governmental and societal interests favor "identifying those guilty of criminal activity and having valid convictions entered against them." It postulates that the strength of such interests is "fortified by the substantial collateral consequences attending conviction for a serious crime." Id. Here, the state refers to statutes providing for sentence enhancement for persistent dangerous felony offenders to which the

---

[2] Unlike the case before us where double jeopardy is not an issue, the sole question presented in *Fitzgerald* v. *United States,* 472 A.2d 52 (D.C. App. 1984), was whether a criminal defendant who had been successful in having his conviction reversed on grounds of trial error and who had served the sentence imposed, would be placed in double jeopardy by a second trial on the same indictment. In *Fitzgerald,* the court held that double jeopardy did not bar a subsequent trial "in this case." *Fitzgerald* v. *United States,* supra, 53.

defendant, if reconvicted, could be exposed if he were later found guilty of certain crimes; see General Statutes § 53a-40 (a) (1) and (2), and (f); a nonsuspendible minimum term for one found guilty of criminal possession of a pistol or revolver when one has been convicted, inter alia, of a class B felony (manslaughter in the first degree in violation of § 53a-55 [a] [1] is a class B felony); General Statutes § 53a-217; and the inability of one convicted of a felony to obtain a permit to carry a pistol or a revolver. General Statutes § 29-29.[3] The state contends that these collateral consequences act to the detriment of persons convicted of serious crimes, even after they have served their sentences and that the state and society have a legitimate interest in seeing that such persons have valid convictions entered against them.

The question that emerges at this point is what standard should be used to evaluate the action of the trial court in dismissing this case with prejudice. Upon analysis, it becomes evident that the notion of fairness permeates the considerations to be given to the trial court's decision in this unique case. Thus, a balancing process must occur which weighs the interests of the state and society in having the defendant again stand trial against the interest of the defendant, who has already served his sentence, in not being subjected to a new trial. Such process, with its core concern of fairness, prescribes the standard that inheres in discretionary choice—that of abuse of discretion. We need not reach any question of whether constitutional principles of due process or fundamental fairness may be the basis for the inherent judicial authority to dismiss with prejudice a criminal case in the posture of the one before us because we draw upon General Statutes § 54-56 as the basis of our disposition.

---

[3] The state also refers to Practice Book § 666 (3) which provides: "Among the factors to be considered in determining the appropriate conditions of release and, if a bond is required, its amount, are the following . . . (3) The defendant's record of convictions . . . ."

General Statutes § 54-56[4] provides, inter alia, that the court may dismiss an information "at any time, upon motion by the defendant . . . and order [the] defendant discharged if, in the opinion of the court, there is not sufficient evidence or cause to justify the . . . continuing of such information or the placing of the person accused therein on trial." The trial court in this case did not abuse its discretion because it properly found "cause" to dismiss under § 54-56 after an explicit weighing of all the competing factors proffered by both sides.[5] Although we do not determine that the defendant had a specific federal or state constitutional right to a dismissal with prejudice, we do posit that the discretion to be exercised must be informed and guided by considerations of fundamental fairness that are ingrained in the concept of due process of law. See generally *Moran* v. *Ohio,* No. 45879, slip op. (Ohio App. Oct. 27, 1983), cert. denied, 469 U.S. 948, 955, 105 S. Ct. 350, 83 L. Ed. 2d 285 (1984) (Brennan and Marshall, Js., dissenting) (notions of fundamental fairness are at the heart of Anglo-American law and independently influence the construction and application of state criminal code).

Initially, we note that the trial court's characterization of the matter for decision as a "dilemma" appears quite appropriate. It has been recognized, as was

[4] General Statutes § 54-56 provides: "DISMISSAL OF INFORMATION BY COURT. All courts having jurisdiction of criminal cases shall at all times have jurisdiction and control over informations and criminal cases pending therein and may, at any time, upon motion by the defendant, dismiss any information and order such defendant discharged if, in the opinion of the court, there is not sufficient evidence or cause to justify the bringing or continuing of such information or the placing of the person accused therein on trial."

[5] The transcript indicates that the trial court had read our opinion in *State* v. *Corchado,* 188 Conn. 653, 453 A.2d 427 (1982), just prior to the hearing on this motion and considered, inter alia, the defendant's claim of the importance of the witness, Luz Bosco, whom the defendant claimed he could not locate because of the passage of time. Id., 654–56, 665.

implicit in the trial court's view, that "[p]rosecutors need not be entirely 'neutral and detached' " because "[i]n an adversary system, they are necessarily permitted to be zealous in their enforcement of the law." *Marshall* v. *Jerrico, Inc.,* 446 U.S. 238, 248, 100 S. Ct. 1610, 64 L. Ed. 2d 182 (1980). "The criminal justice system gives prosecutors a wide latitude and broad discretion in determining when, who, why and whether to prosecute for violations of the criminal law." *State* v. *Anonymous (1980–7),* 36 Conn. Sup. 338, 339, 420 A.2d 910 (1980). Prosecutorial discretion, however, is not unlimited. Judge (later Chief Justice) Wynne said of what is now General Statutes § 54-56 that "[t]he purpose of the law and the philosophy back of it was to prevent unchecked power by a prosecuting attorney." *State* v. *Carroll,* 13 Conn. Sup. 112 (1944); see also *State* v. *Bellamy,* 4 Conn. App. 520, 527, 495 A.2d 724 (1985); *State* v. *Reinosa,* 29 Conn. Sup. 117, 118, 274 A.2d 452 (1970). The clear language of § 54-56 permits the court to act not only where it is of the opinion that there is "not sufficient evidence" but alternatively where there is not "cause." This statutory power, which is to be exercised with great caution, necessarily implies that where the circumstances are compelling, the dismissal may be ordered with prejudice.

The court's power to fashion that remedy in this case under § 54-56 is unquestioned. See generally *State* v. *Carter,* 64 N.J. 382, 392, 316 A.2d 449 (1974), overruled on other grounds, *State* v. *Krol,* 68 N.J. 236, 344 A.2d 305 (1975). In *State* v. *Abbati,* 99 N.J. 418, 434, 493 A.2d 513 (1985), the New Jersey Supreme Court stated: "Although [a] trial court must carefully consider [a] prosecutor's decision to reprosecute in reaching its conclusion regarding dismissal, and defer to it when the balance does not otherwise compel dismissal, [a] prosecutor's discretion is itself subject to the power of the court." In this case, the trial court found "cause"

not to proceed with the defendant's trial in a combination of factors including the improbability of further incarceration, even if the defendant were again convicted, and the state's two year delay in initiating reprosecution of the defendant. The trial court was confronted with its "dilemma" as the state was ready to proceed with the retrial on September 20, 1984, almost two years after our remand for the new trial. We note that the state has not refuted the defendant's claim that on two occasions prior to September 20, 1984, when called to court, the defendant and his counsel had been in attendance. The state offered no reason for the time lag of almost two years in starting the second trial. While there are no constitutional speedy trial issues in this case, given no explanation of the delay of almost two years by the state in putting the defendant on trial, a relevant observation is that "[t]he requirement that criminal offenses be promptly tried 'has its roots at the very foundation of our English law heritage.' *Klopfer* v. *North Carolina,* 386 U.S. 213, 223, 87 S. Ct. 988, 993 [18 L. Ed. 2d 1] (1967)." *State* v. *Hicks,* 285 Md. 310, 322, 403 A.2d 356 (1979) (Davidson, J., dissenting). Although the time delay factor was argued to the trial judge, it is apparent from the transcript that it was not controlling. While the court expressly alluded to "crowded dockets," it is obvious that it considered this case "very unique" and that its consideration had to be of the "rights of the individual" in the particular case and "the rights of the state as well." This accords with the view articulated by the New York Court of Appeals in explicating the court's power to dismiss an information "in the interest of justice." *People* v. *Rickert,* 58 N.Y.2d 122, 125, 446 N.E.2d 419, 459 N.Y.S.2d 734 (1983). In *Rickert,* the court stated that "[t]he generality and exquisiteness of the interest of justice ideal was not intended, however, to convey an untrammeled right to act on purely subjective consider-

ations. Required, rather, was a sensitive balancing of the interests of the individual and of the People . . . ." *People* v. *Rickert,* supra, 126–27;[6] see also *State* v. *Abbati,* supra.

The state, in pressing for the retrial below and before us, argued that the collateral consequences attendant upon the conviction of a serious crime as possible results of a second trial underscore the state and societal interests that require another trial of the defendant. The trial court recognized that the crime involved was serious. The court took care to point out that the defendant had not only served his sentence but had been discharged from parole without incident, that a conviction in a new trial could concededly never have resulted in incarceration and that the defendant, now fifty-three years old, had no other criminal record.[7] The

[6] The defendant places great stress on *People* v. *Buford,* 132 Cal. App. 3d 288, 299, 182 Cal. Rptr. 904 (1982), in which the California Court of Appeals reversed the trial court's overruling of the defendant's challenge to the racial composition of the jury array and then, "guided by practical considerations," ordered the prosecution terminated. That court, without persuasive analysis, did so because "[i]n view of the time that [had] elapsed, it would be unrealistic to require the prosecution now . . . since [the defendant] has already served his sentence in prison, and perhaps parole, such a procedure would be unfair to [the defendant] as well." *People* v. *Buford,* supra, 300–301. The defendant's stress on *Buford* is not wholly justified, particularly because the opinion strongly suggests that the appellate court acted sua sponte in terminating the prosecution. While *Buford* can fairly be said to have been disposed of on "inherent power" rationale, we do not reach any such question in our disposition.

[7] From the record, including the transcript, it appears that at the hearing on the defendant's motion to dismiss, the trial court, the prosecutor and defense counsel were not aware that the defendant had been convicted of a misdemeanor in 1977. This was the result of a conviction for larceny in the third degree for which the defendant had received a thirty day suspended sentence and one year conditional discharge. The defense counsel learned of the 1977 conviction shortly after the hearing and brought it to the attention of the state and the court. Although the trial court had granted the motion to dismiss on September 20, 1984, a hearing concerning the 1977 misdemeanor conviction took place on October 3, 1984. The trial court, however, adhered to its earlier ruling noting, inter alia, that the 1977 conviction was a misdemeanor and did not involve violence.

trial court, again weighing "what can be accomplished with a trial," factored into its balancing process the state's argument that, if the defendant were reconvicted, then that "conviction might have some future benefit to the State that [if he] were to be arrested again, that conviction might have some bearing on the amount of bail that the Court would impose or in some other ways that the conviction might have some bearing if it were a crime of the same magnitude that he would be charged as a dangerous felony offender." The "possibility" of habitual criminal proceedings may be considered a collateral consequence of criminal proceedings *after* a reconviction in the retrial for which the state was pressing. See generally *State* v. *Cameron,* 30 Wash. App. 229, 233, 633 P.2d 901 (1981). The trial court was entitled to accord fair weight to the fully served sentence in its consideration of the deterrence aspect of punishment here. Moreover, we must presume that the court was also aware that "[r]etribution is no longer the dominant objective of the criminal law" and that "[r]eformation and rehabilitation of offenders have become important goals of criminal jurisprudence." *Williams* v. *New York,* 337 U.S. 241, 248, 69 S. Ct. 1079, 93 L. Ed. 1337, reh. denied, 337 U.S. 961, 69 S. Ct. 1529, 93 L. Ed. 1760 (1949).

The trial court extended appropriate deference to the state's decision to reprosecute, assessing the reasons advanced, including the seriousness of the crime which involved a death, and society's concern for the definitive resolution of criminal prosecutions as well as the defendant's circumstances and the impact of a retrial on the defendant. Throughout the court's remarks disposing of the motion, its concern with fairness in the balancing process is unmistakably evident, as is its realization that the decision required a tempering accommodation between the pressing of the state to vindicate

the public justice and the defendant's protestations that justice required no more from him than had been exacted.

The power under § 54-56 to dismiss for cause should be sparingly exercised and then only with great caution and awareness of the probable consequences. We have said that "[d]iscretion . . . imports something more than leeway in decision-making." *State* v. *Onofrio,* 179 Conn. 23, 29, 425 A.2d 560 (1980). It denotes "the absence of a hard and fast rule or a mandatory procedure regardless of varying circumstances." *State* v. *Wallach,* 353 Mo. 312, 323, 182 S.W.2d 313 (1944). It means " ' "a legal discretion to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." ' " *Buckley* v. *Warden,* 181 Conn. 286, 290, 435 A.2d 348 (1980), quoting *Hammerberg* v. *Leinert,* 132 Conn. 596, 604, 46 A.2d 420 (1946); see *State* v. *Battle,* 170 Conn. 469, 476, 365 A.2d 1100 (1976).

Based upon our review of this unique case, we conclude that the trial court did not abuse its discretion in dismissing this case with prejudice. The dismissal was a reasoned and fair response to the Gordian knot-like problem presented by the competing interests which had been fully identified by both counsel.

There is no error.

In this opinion the other justices concurred.