[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant, Murray Colton, who is charged with murder in violation of General Statutes 53a-54a and 53a-8, has moved to dismiss the charges against him, asserting that (1) double jeopardy principles bar a fourth trial because of prosecutorial misconduct at the third trial; (2) there is insufficient evidence because the former testimony of a key government witness, who is now deceased and, therefore, unavailable, may not be introduced in the fourth trial; (3) a fourth trial would undermine the integrity of the court; and (4) a fourth trial would undermine the interests of justice.
At this juncture, it is important to note that the defendant has been tried on the pending charge three times. In 1989 and again in 1990, mistrials were declared after the jury was unable to reach a verdict. Thereafter, in 1991 the defendant was retried, convicted, and sentenced to serve fifty years for the 1987 murder of the victim, Patricia Konesky. The defendant appealed his conviction to the state supreme court, which reversed and remanded the case for a new trial. State v. Colton, 227 Conn. 231,630 A.2d 577 (1993). The supreme court reversed the conviction on the ground that the trial court had violated the defendant's constitutional right to confrontation by excluding extrinsic CT Page 48 evidence on the motive and bias of the state's chief witness, Janice Tourangeau. Id., 233. Subsequently, the state initiated a fourth prosecution of the defendant, which the defendant now moves to dismiss.
A court may dismiss an information if it determines that there is not "sufficient evidence or cause" to justify the continuance of the prosecution. General Statutes 54-56. "The purpose of the statute is to prevent unchecked power by a prosecuting attorney." (Internal quotation marks omitted; citations omitted.) State v. Dills, 19 Conn. App. 495, 501, 563 A.2d 733 (1989), quoting State v. Corchado, 200 Conn. 453, 460, 512 A.2d 183 (1986). The statutory power to dismiss a prosecution "is to be exercised with great caution" and only where "the circumstances are compelling." State v. Dills, supra, 502.
Double Jeopardy
The defendant first argues that double jeopardy principles bar a fourth prosecution. In support of his double jeopardy argument, the defendant seeks to show that the prosecutor at the third trial "deliberately set out to develop a one-sided portrait of the State's key witness . . ., intentionally failed to present countervailing evidence indicating that the witness' testimony was false, [and] obstructed all efforts by the defense to itself present such countervailing evidence . . ." with the intention of avoiding an acquittal. The defendant argues that the prosecutorial misconduct during the third trial bars a fourth trial.
For purposes of determining whether the double jeopardy clause precludes a subsequent trial after the reversal of a conviction, a distinction is made between a reversal based on trial error and one based on the insufficiency of evidence. Burks v. United States,437 U.S. 1, 14, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). "[T]he Double Jeopardy Clause imposes no limitation upon the power of the government to retry a defendant who has succeeded in persuading a court to set his conviction aside, unless the conviction has been reversed because of insufficiency of the evidence." Oregon v. Kennedy, 456 U.S. 667, 676, n. 6, 102 S.Ct. 2083, 72 L.Ed.2d 416
(1982); see also Burks v. United States, supra.
The successful appeal by a defendant of a judgment of conviction based solely on the ground of trial error poses no bar to a further prosecution of him on the same charge. Burks v. United States., supra; People v. Crosby, 182 App.Div.2d 696, 582 CT Page49 N.Y.S.2d 466 (1992). Reversal for trial error "`is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e.g., incorrect receipt or rejection of evidence. . . . When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished.'" State v. Gray,200 Conn. 523, 540, 512 A.2d 217 (1986), quoting Burks v. United States, supra, 15.
The defendant relies on Oregon v. Kennedy, supra, and United States v. Wallach, 979 F.2d 912 (2d Cir. 1992), in support of his arguments. In Kennedy, supra, the United States Supreme Court ruled that the double jeopardy clause bars a retrial after a mistrial only in the limited situation where the prosecutor's conduct "is intended to `goad' the defendant into moving for a mistrial." Id., 676. In reaching its decision, the Court emphasized that "one of the principle threads making up the protection embodied in the Double Jeopardy Clause is the right of the defendant to have his trial completed before the first jury impaneled to try him. . . ." Id., 673.
In Wallach, supra, the second circuit applied the Kennedy rule to situations where "the misconduct of the prosecutor is undertaken, not simply to prevent an acquittal, but to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct." Id., 916. The court stated that it doubted "that the Supreme Court expected its carefully worded statement of the rule in Kennedy to be extended beyond the context of a trial that ends with the granting of a defendant's motion for mistrial." Id. The court pointed out that Kennedy "proceed[ed] from the premise that `the Double Jeopardy Clause affords a criminal defendant a valued right to have his trial completed by a particular tribunal,'" which is a right that is not at issue when there has been a conviction. Id., quoting Oregon v. Kennedy, supra, 671-72. Nevertheless, the court concluded that in the narrow circumstances of a reversal based on prosecutorial misconduct, the double jeopardy clause may bar a retrial.
In the present case, Colton's conviction was reversed by the state supreme court solely on the ground that the trial court improperly excluded evidence that would have contradicted the testimony of the state's key witness, Janice Tourangeau. Colton appealed his conviction on several grounds, none of which were CT Page 50 based on prosecutorial misconduct. See State v. Colton, supra, 233. The misconduct of the prosecutor that the defendant is now alleging in his motion to dismiss had no impact on the supreme court's decision to reverse and remand the case for a new trial. Therefore, this case is factually distinct from situations where a prosecutor's misconduct deprives the defendant of his right to be tried by a particular tribunal by goading the defendant into moving for a mistrial.
The defendant also relies on Commonwealth v. Smith, 532 Pa. 177,615 A.2d 321 (1992), which held that under the state constitution, double jeopardy provisions may bar a retrial after a reversal where there has been egregious prosecutorial misconduct in the first trial. The court ruled that although the double jeopardy provisions of the federal constitution may not bar a retrial, the state constitutional protections do prohibit the subsequent prosecution. Id., 182.
There is presently no case law in Connecticut suggesting that the state's protections against double jeopardy are greater than the federal protections. See State v. Woodson, 227 Conn. 1, 7, ___ A.2d ___ (1993). Therefore, the rationale of Smith is inapplicable to the present case since Smith was decided under Pennsylvania constitutional provisions.
In the present case, the defendant's conviction was reversed solely on the ground that the trial judge improperly excluded evidence that would have contradicted the testimony of a key state witness. State v. Colton, supra. Since trial error was the sole basis for the reversal, double jeopardy principles do not bar retrial.
Admissibility of Former Testimony
The defendant argues that the testimony of Janice Tourangeau at the third trial should not be admitted at the fourth trial. Tourangeau, who testified at the previous three trials, died on July 16, 1993 and, therefore, is unavailable for the fourth trial. Tourangeau testified at all three trials that she witnessed the defendant murder Konesky. The state concedes that without the testimony of Janice Tourangeau, the state does not have a provable case against the defendant.
The defendant argues that since he was not afforded a full opportunity to cross-examine Tourangeau with regard to her motives CT Page 51 for testifying, the testimony may not come in under the former testimony exception to the hearsay rule. The state argues that the defendant did have a complete opportunity to cross-examine Tourangeau and, therefore, the former testimony should be admitted in the fourth trial. The state argues further that even if the testimony from the third trial is excluded, the testimony from the first and second trials and the probable cause hearing, may be admitted under the former testimony exception.
"[P]rior testimony of an unavailable witness is admissible in a subsequent trial as an exception to the hearsay rule." State v. Torres, 210 Conn. 631, 646, 556 A.2d 1013 (1989), citing Ohio v. Roberts, 448 U.S. 56, 67, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); California v. Green, 399 U.S. 149, 165, 90 S.Ct. 1930,26 L.Ed.2d 489 (1970); State v. Parker, 161 Conn. 500, 503-04, 289 A.2d 894
(1971). "As long as the trial court finds the requisite indicia of reliability in the former testimony, such as the opportunity to cross-examine the declarant fully, the testimony is admissible." (Citation omitted.) Id.
The "test is the opportunity for full and complete cross-examination rather than the use made of the opportunity." State v. Parker, supra, 504. The "extent of cross-examination, whether at a preliminary hearing or at trial, is a trial tactic." (Citations omitted.) State v. Parker, supra. Once the witness is "satisfactorily shown to be unavailable, `his statement is admissible only if it bears adequate indicia of reliability. . . .'" State v. Outlaw, 216 Conn. 492, 505, 582 A.2d 751 (1990), quoting Ohio v. Roberts, supra, 66.
During the cross-examination of Tourangeau at the third trial, the defendant asked Tourangeau whether she knew Michael Brown. Id., 242. The state objected and the defendant presented an offer of proof. Id. The defendant explained to the court that he wished to bring in Brown and another witness, Jackie Boyles, in order to contradict Tourangeau's testimony that she had not engaged in drug use or prostitution after October, 1989. Id., 241. The trial court ruled that the testimony of those witnesses was collateral and refused to permit the defendant to call them to the stand. Id., 242. The trial court explained to the defense counsel that its ruling did not "mean you cannot ask the witness the question to see what her answer is. All it means is if her answer is in the negative you cannot bring in extrinsic evidence on that, those precise questions, but I think you've got a right to ask the witness the questions to at least find out what her answer CT Page 52 is . . . Depending on the answer, if it's in the negative, you're going to be stuck with that answer." Id., 242-43. The defendant chose not to ask the questions. Id., n. 13, 243. The supreme court ruled that the trial judge improperly excluded the impeachment evidence and ordered a new trial. Id., 233.
The trial judge's improper exclusion of the impeaching evidence at the third trial impaired the defendant's ability to fully cross-examine Tourangeau by deterring the defendant from asking Tourangeau any questions regarding the two impeachment witnesses. Although the trial judge allowed the defendant to question Tourangeau regarding Brown and Boyles, he effectively precluded such questioning by ruling that the defendant would be stuck with her answers and would not be allowed to introduce any impeaching evidence. Since the trial court's ruling restricted cross-examination of a key government witness, who is now deceased, the transcript of her testimony at the third trial may not be admitted at the fourth trial.
The transcripts of Tourangeau's testimony at the earlier trials and probable cause hearing, however, may be introduced at the defendant's fourth trial. During these two prior trials and probable cause hearing, the defendant was given a full and complete opportunity to cross-examine Tourangeau. Although the defendant did not ask Tourangeau questions regarding Brown and Boyles, counsel did question her about her present lifestyle and substance abuse. Tourangeau's testimony at the first and second trials was given under oath before a judicial tribunal and the defendant was present in court. See State v. Outlaw, supra, 505. Although the defendant was represented by different counsel at the earlier trials, this factor alone does not demand exclusion of the prior testimony. Ohio v. Roberts, supra, 72 (different lawyers at preliminary hearing and trial does not affect admissibility of former testimony). It does not appear to this court that the defendant was "`significantly limited in any way in the scope or nature of his cross-examination'" of Tourangeau at the earlier proceedings. Id., quoting California v. Green, supra, 165. Therefore, Tourangeau's former testimony from the probable cause hearing and the first and second trials certainly bears adequate indicia of reliability to warrant introduction of those transcripts at the fourth trial. Furthermore, the defendant presumably has available and may now choose to have Michael Brown and Jackie Boyles testify at the fourth trial in order to impeach Tourangeau's earlier testimony if it is admitted by the trial court. CT Page 53
Integrity of the Court
The defendant argues that a fourth prosecution would undermine the integrity of the court since the majority of the evidence that the state introduced against the defendant consisted of Tourangeau's perjured testimony. The defendant argues that certain police and hospital records demonstrate that Tourangeau's testimony consisted of "calculatad misrepresentations on the critical issue of motivation. . . ." Also, the defendant argues that certain scientific evidence shows that Tourangeau's testimony was "intentionally untrue. . . ." The state argues that these issues were brought up on appeal and that the supreme court ruled that they were collateral issues.
At the third trial, the defendant sought to introduce the aforementioned records in order to impeach Tourangeau's testimony. The judge at the third trial excluded the police and hospital records because they were collateral. State v. Colton, supra, 252. On appeal, the supreme court upheld the trial court's exclusion, holding that Tourangeau's records "predated the murder" and "did not divulge an ulterior motive for her testimony, or necessarily contradict Tourangeau's claimed reasons for coming forward." Id., 253.
The defendant now seeks to use these documents for the same purpose he sought to use them at the third trial — to attack the credibility of Tourangeau. Since the supreme court has ruled that these documents are collateral and may not be used to impeach Tourangeau, the records do not serve as a sound basis for dismissing the fourth prosecution.
Additionally, the scientific evidence introduced at the third trial to contradict Tourangeau's testimony consisted of expert testimony. Tourangeau testified that she "saw something squirt out of the victim's head. . . ." Id., 237. The defense expert testified that there was no exit wound on the side of the victim's head, which would be necessary for there to have been discharge from the head. The issue is "one of credibility," which should "be determined by the jury as the trier of fact." (Citations omitted.) State v. Avcollie, 178 Conn. 450, 451, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S.Ct. 667, 62 L.Ed.2d 645 (1980).
Therefore, neither the records nor the scientific evidence properly serve as a valid basis for dismissing this case. CT Page 54
Interests of Justice
Finally, the defendant argues that the continued prosecution of the defendant would undermine the interests of justice. The defendant asserts that since he has been subjected to three complete trials and has served over three years of his sentence, and since the trials have already expended a substantial amount of state resources, there is insufficient cause or justification to continue the fourth prosecution. The state argues that a fourth trial will best serve the interests of justice to society and the victim.
In determining whether there is sufficient cause to prosecute a case, the trial court must balance "`the interests of the state and society . . . against the interest of the defendant. . . .'" State v. Dills, supra, 501-02, quoting State v. Corchado, supra, 458. "The court's discretion in this regard `must be informed and guided by considerations of fundamental fairness that are ingrained in the concept of due process of law.'" (Citation omitted.) Id. "In exercising its discretion, the court must explicitly weigh the comparing factors on both sides. . . ." (Citation omitted.) Id. "This difficult and delicate process necessarily involves a careful consideration by the court of such factors as the strength of the state's case, the likelihood of conviction, the severity of the crime, its effect on the victim, the strength of the defendant's defense, the defendant's personal situation, and all the other myriad factors that underlie a judgment regarding fundamental fairness." Id., 504.
In the present case, the defendant is charged with a brutal murder. The state presented sufficient evidence in the third trial to convict the defendant, and the jury deliberations were remarkably short (less than 6 hours) (Clerk's Courtroom Log, Courtroom 4A, Judicial District of New Haven) after a rather lengthy and contentious trial (19 days of evidence) (Clerk's Courtroom Log, Courtroom 4A, Judicial District of New Haven). Based on all of the foregoing considerations, this court is of the opinion that the interests of justice would be ill served by a dismissal of the case at this time. The defendant's motion to dismiss is denied.
Ronan, J. CT Page 55