[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO DISMISS
CT Page 8617
The defendant, Leonel Diaz, presently charged with Manslaughter in the First Degree has moved to dismiss the presently pending charge after three successive juries have been unable to reach a unanimous verdict and mistrials have been declared.
During the first trial the defendant was charged with murder. During the second trial the jury acquitted him of the murder charge, however, this jury deadlocked as to the lesser included offenses. At the third trial the defendant was charged and tried for one count of manslaughter in the first degree. In each of these trials a mistrial was declared after each jury had communicated that it was deadlocked.
The defendant's motion seeking a dismissal has been made pursuant to General Statutes § 54-56.
 I.
Section 54-56 provides that "[a]ll courts having jurisdiction of criminal cases shall at all times have jurisdiction and control over informations and criminal cases pending therein and may, at any time, upon motion by the defendant, dismiss any information and order such defendant discharged if, in the opinion of the court, there is not sufficient evidence or cause to justify the bringing or continuing of such information or the placing of the person accused therein on trial." General Statutes § 54-56.
The leading Connecticut case interpreting General Statutes § 54-56 is State v. Corchado, 200 Conn. 453, 512 A.2d 183
(1986). In that case, the defendant was convicted after a jury trial of the crime of manslaughter in the first degree, which arose out of a shooting in Bridgeport in 1979. A sentence was imposed on February 25, 1981. The defendant appealed his conviction and on December 14, 1982, the Connecticut Supreme Court reversed his conviction because of error in the jury instructions and ordered a new trial. State v. Corchado,188 Conn. 653, 669, 452 A.2d 427 (1982). By December 14, 1982, the defendant had already been released from prison and was on parole and on May 31, 1984, the board of parole voted to discharge him from further parole supervision. Prior to the start of the second trial, the defendant moved to dismiss the charge against him. The CT Page 8618 trial court granted the defendant's motion. In the ensuing appeal the issue before the Supreme Court was whether the trial court abused its discretion in granting the motion to dismiss.
The Connecticut Supreme Court explained that a proper exercise of discretion involves a balancing process "which weighs the interests of the state and society in having the defendant again stand trial against the interest of the defendant, who has already served his sentence, in not being subjected to a new trial." State v. Corchado, supra, 200 Conn. 458. "The trial court in this case did not abuse its discretion because it properly found `cause' to dismiss under § 54-56 after an explicit weighing of all the competing factors proffered by both sides. Although we do not determine that the defendant had a specific federal or state constitutional right to a dismissal with prejudice, we do posit that the discretion to be exercised must be informed and guided by considerations of fundamental fairness that are ingrained in the concept of due process of law."[1]
Id., 459. The court also stated, however, that "[tlhe power under § 54-56 to dismiss for cause should be sparingly exercised and then only with great caution and awareness of the probable consequences." Id., 464.
Our Supreme Court recently addressed the proper standard to be employed by a trial court in dismissing an information pursuant to General Statutes § 54-56. In State v. Kinchen,243 Conn. 690, 702-04, 707 A.2d 1255 (1998), the court explained that under section 54-56, there are two grounds upon which a dismissal of an information may be predicated: insufficient evidence or insufficient cause. After finding that the defendant was not entitled to dismissal under the insufficient evidence prong, the court held that "a trial court is empowered to dismiss a case for insufficient cause under § 54-56 only in the most compelling of circumstances. State v. Corchado, supra,200 Conn. 460. Because discretionary prosecutorial decisions, including the decision whether to proceed to trial, ordinarily are unreviewable by the court absent a showing of prosecutorial impropriety, the power to render a dismissal under § 54-56 for insufficient cause is to `be sparingly exercised and then only with great caution and awareness of the probable consequences.' Id., 464. In order to ensure that this discretion is exercised in accordance with these principles, it is essential for `the court explicitly to weigh all the competing factors and considerations of fundamental fairness to both sides — the defendant, the state and society, and presumably the victim. . . . This CT Page 8619 difficult and delicate process necessarily involves a careful consideration by the court of such factors as the strength of the state's case, the likelihood of conviction, the severity of the crime, its effect on the victim, the strength of the defendant's defense, the defendant's personal situation, and all the other myriad factors that underlie a judgment regarding fundamental fairness.' State v. Dills, supra, 19 Conn. App. 503-04; see Statev. Daniels, 209 Conn. 225, 238, 550 A.2d 885 (1988), cert. denied, 489 U.S. 1069, 109 S.Ct. 1349, 103 L.Ed.2d 817 (1989);State v. Corchado, supra, 458-59. Thus, a trial court's invocation of its authority to dismiss a case under the insufficient cause prong of § 54-56 can be justified only when: (1) the court expressly and carefully has considered all of the relevant competing factors; and (2) dismissal is supported by overriding equitable considerations." Id., 703-04.
Finally, it should be noted that a state's attorney "has broad discretion in determining what crime or crimes to charge in any particular situation. . . . So long as he acts within the jurisdiction of his office it is not appropriate for a court to set policy for the performance of his prosecutorial function. . . . The criminal justice system vests him with broad discretion to determine whether to press a prosecution. . . . In the absence of statutory authority, the court has no power of its own motion to dismiss a criminal prosecution unless there is a fundamental legal defect in the information or indictment . . . or a constitutional defect such as denial of the right to a speedy trial. . . ." (Citations omitted; internal quotation marks omitted.) State v. Dills, 19 Conn. App. 495, 500, 563 A.2d 733
(1989). See also State v. Kinchen, supra, 243 Conn. 700-01. General Statutes § 54-56 "constitutes a grant of such `statutory authority.'" State v. Dills, supra, 19 Conn. App. 500. "The purpose of the statute is `to prevent unchecked power by a prosecuting attorney.' State v. Carroll, 13 Conn. Sup. 112
(1944)." Id., 501.
Unlike Corchado, this case does not involve a factual setting in which the state is attempting to retry the accused after the conviction had been reversed on appeal and the defendant served his entire sentence as well as completed parole.
 II.
In State v. Aillon, 182 Conn. 124, 438 A.2d 30 (1980), cert. denied, 449 U.S. 1090, 101 S.Ct. 883, 66 L.Ed.2d 817 (1981), CT Page 8620 aff'd, 189 Conn. 416, 456 A.2d 279, cert. denied, 464 U.S. 837,104 S.Ct. 124, 78 L.Ed.2d 123 (1983), aff'd on other grounds,Aillon v. Manson, 201 Conn. 675, 519 A.2d 35 (1986), the court addressed the issue of whether the double jeopardy clause of the United States constitution prohibited a third trial of a defendant who successfully petitioned for a new trial after his first trial, which resulted in a conviction, and whose second trial terminated in a mistrial when the jury could not agree on a verdict. The court explained that the question of whether under the double jeopardy clause there can be a new trial after a mistrial depends on whether there is manifest necessity for the mistrial. "However, as Perez and its progeny, e.g., United Statesv. Dinitz, [424 U.S. 600,] 608[,96 S.Ct. 1075, 47 L.Ed.2d 267
(1976)], and United States v. Jorn, supra, [400 U.S.] 484, make clear, when a defendant consents to a declaration of a mistrial, no finding of manifest necessity for the declaration need be made." Id., 129. Thus, when a mistrial is declared at the defendant's request or with his consent, as a result of a jury's inability to reach a verdict, "any barrier to reprosecution is removed. . . . [R]eprosecution . . . is barred only when prosecutorial or judicial overreaching is designed to provoke the defendant into asking for a mistrial, thereby avoiding an acquittal or affording the state another, perhaps more favorable, opportunity to convict, or the prosecutorial or judicial error was otherwise motivated by bad faith or attempted in order to harass or prejudice the defendant." Id., 129-30.
In Aillon, no allegation of prosecutorial or judicial bad faith had been made. In holding that a third trial was not precluded on double jeopardy grounds, the court relied on the reasoning of the Second Circuit in United States v. Castellanos,478 F.2d 749 (2nd Cir. 1973), wherein the court held: "Even assuming arguendo that we could step outside the Perez test and invoke the Double Jeopardy Clause simply because a certain number of mistrials had occurred, we would still conclude that reversal is mandated here. If the appropriate interest of the defendant to be weighed is the avoiding of the harassment and strain of multiple prosecutions, the situation where the first and second trials end in deadlocked juries is hardly distinguishable from the case where the third trial occurs after one or more appellate reversals. Yet, in Keerl v. Montana, 213 U.S. 135, 29 S.Ct. 469,53 L.Ed. 734 (1909), the Supreme Court has held that the Double Jeopardy Clause is not violated by retrial after a jury deadlock and an appellate reversal of a conviction." Id., 753. CT Page 8621
When confronted with this issue, other jurisdictions have held similarly. See United States v. Brown, 677 F.2d 26 (6th Cir.), cert. denied, 459 U.S. 855, 103 S.Ct. 124, 74 L.Ed.2d 107
(1982); United States v. Ellis, 646 F.2d 132 (4th Cir. 1981) (second trial not barred after mistrial due to jury deadlock);United States v. Gunter, 546 F.2d 861 (10th Cir. 1976), cert. denied, 431 U.S. 920, 97 S.Ct. 2189, 53 L.Ed.2d 232 (1977) (third trial not barred after two mistrials, both due to a jury deadlock, and explaining that "[t]here indeed may be a breaking point, but we do not believe it was reached in the instant case"); United States v. Persico, 425 F.2d 1375 (2nd Cir.), cert. denied, 400 U.S. 869, 91 S.Ct. 102, 27 L.Ed.2d 108 (1970) (five trials permitted, two ended in convictions which were reversed on appeal, conviction in fifth trial not barred); Ex Parte Anderson,457 So.2d 446 (Ala. 1984) (because three prior trials ended in properly declared mistrials, double jeopardy did not bar fourth trial); State v. Moriwake, 647 P.2d 705 (Haw. 1982) (third trial not barred following two hung jury mistrials); State v. White,209 N.W.2d 15 (Iowa 1971) (same); State v. Abbati, 493 A.2d 513
(N.J. 1985) (same); State v. Witt, 572 S.W.2d 913
(Tenn. 1978) (fourth trial following three mistrials due to deadlocked juries not barred on double jeopardy grounds); Sullivan v. State,874 S.W.2d 699 (Tex. 1994) (third trial following two mistrials resulting from hung juries did not violate double jeopardy clause).
Therefore, while no court has attempted to arbitrarily fix the permissible number of times a defendant may be retried after mistrials, most courts reject double jeopardy as a ground to prohibit retrial after multiple juries have been deadlocked.
 III.
The defendant in this case is presently charged with a serious offense which involved a most serious circumstance namely, the death of the victim, Mr. Tadduni.
The defendant asserts that since he has been subjected to three complete trials there is insufficient cause or justification to continue the fourth prosecution. The state points out that the defendant has been released on bond through almost the entire pendency of this case and that on balance, given the severity of the charge and the fact that there has been no lack of diligence on the part of the State's Attorney, a fourth trial should be allowed to proceed. CT Page 8622
In determining whether there is sufficient cause to prosecute a case, the trial court must balance "`the interests of the state and society . . . against the interest of the defendant . . . '"State v. Dills, supra, 19 Conn. App. 501-02, quoting State v.Corchado, supra, 200 Conn. 458. "The court's discretion in this regard `must be informed and guided by considerations of fundamental fairness that are ingrained in the concept of due process of law.'" (Citation omitted.) State v. Dills, supra,19 Conn. App. 502. "In exercising its discretion, the court must explicitly weigh the competing factors on both sides. . . ." (Citation omitted.) Id. "This difficult and delicate process necessarily involves a careful consideration by the court of such factors as the strength of the state's case, the likelihood of conviction, the severity of the crime, its effect on the victim, the strength of the defendant's defense, the defendant's personal situation, and all the other myriad factors that underlie a judgment regarding fundamental fairness." Id., 504.
Based on all of these considerations, this court is of the opinion that the interests of justice would be ill served by a dismissal of the case at this time. The defendant's motion to dismiss is denied.
RONAN, J.