[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
Defendant has filed an amended motion dated October 18, 2000 seeking to dismiss a criminal information dated October 5, 2000 charging the defendant with manslaughter, in violation of Sec. 53a. 55(a)(1) of the Connecticut General Statutes. The case has taken a long and tortured route through the judicial system so some chronology is in order.
John Tadduni was murdered on November 20, 1991 in the area of State Street and Seeley Street in the south end area of Bridgeport. Almost five years later on September 30, 1996 the defendant was arrested and charged with Tadduni's murder, the State alleging in its information that Tadduni died as the result of being shot at State Street and Seeley Street in Bridgeport. Defendant's first trial resulted in a mistrial being declared on June 18, 1987 (Gormley, J.) because the jury was unable to arrive at a verdict on the only charge submitted to them — murder. The second trial was initially tried as a murder case only, but over the objection of the defense was submitted to the jury with the additional charges of manslaughter in the first degree as lesser included offenses. The jury acquitted on the murder charge but deadlocked on manslaughter (the lesser included offenses) and a mistrial was declared on September 30, 1997. (Gormley, J.). At defendant's third trial he was charged with a one count information alleging manslaughter in the first degree (53a-55a-11). Again, the jury deadlocked and a mistrial was declared on January 12, 1998 (Stodolink, J.). Jury selection in the fourth trial commenced on October 11, 2000, but prior to the jury's selection, the defendant filed a Motion to Dismiss claiming exculpatory information had been suppressed and the jury was discharged on October 20, 2000, before being sworn. Defense counsel represented that if the motion was not decided in favor of the defendant an appeal would be filed. Based on State v. Boyd, CT Page 4647221 Conn. 685, 688 n. 4, 607 A.2d 376, cert. denied, 506 U.S. 903,121 L.Ed. 259, colorable claims of double jeopardy are an exception to the general rule that criminal cases must ordinarily await final judgment. Transcripts of prior testimony were required and evidentiary hearings were held over a period of four days relating to the defendant's Motion to Dismiss.
Essentially, defendant claims that to require him to stand trial a fourth time would violate his constitutional protection against double jeopardy and the constitutional policy of finality.
On February 24, 1998, defendant filed a motion to dismiss based on the claim that his constitutional protection against double jeopardy and the constitutional policy of finality violated his rights. By written memorandum of decision dated August 12, 1998, the court (Ronan, J.) denied this motion ruling that unlike State v. Conchado, 200 Conn. 453,459 (1986), this case did not involve a similar factual setting and that the interests of justice would not be served by a dismissal of the case at that time.
On August 31, 1998, the defendant filed an appeal in the Appellate Court claiming the charge of manslaughter in the first degree should be dismissed based on the grounds of double jeopardy. The appellate court dismissed the appeal, without opinion, in effect upholding the written opinion of Ronan, J.
Defendant raises, as part of his amended motion to dismiss, a new issue claiming that exculpatory evidence was not provided to him until October 10, 2000, almost nine years after the murder and more than three years after the first trial. A copy of the material furnished to the defendant by the State and claimed by the defendant to be exculpatory is attached hereto and designated as "Exhibit A". It shall be referred to as the "Remele report.[1]"
Defendant in support of his motion to dismiss alleges that the State's Attorney suppressed exculpatory information. The prosecution clearly has a duty to disclose to the defense all information and material that may tend to exculpate a defendant. Conn. Gen. Statutes § 54-86c and Connecticut Practice Book § 40-11(a)(1) and (b). The failure to disclose or provide exculpatory information to the prosecution by law enforcement officials does not excuse the disclosure of exculpatory information to the defendant. "Police are treated as an arm of the prosecution for Brady purposes." Demers v. State, 209 Conn. 143, 153
(1988). Exculpatory information held by the police department is deemed to be in constructive possession of the prosecution. CT Page 4648
The Assistant State's Attorney who argued the motion to dismiss reported that the State's Attorney told him he had turned over the entire file, but the State's Attorney at the hearing on the motion to dismiss represented that the non-disclosed report of Detective Remele had been in his possession since the inception of the prosecution and the non-disclosure of the Remele report was an intentional act because he did not perceive it to be exculpatory.
Defendant has raised three grounds for dismissal in the present case. He claims the information should be dismissed under Practice Book §§40-3 and 40-5 (b) due to the State's suppression of exculpatory information. He also seeks dismissal of the information on double jeopardy grounds pursuant to State v. Colton, 234 Conn. 683 (1995), and pursuant to the court's authority under General Statutes § 54-56.
The defendant claims that the Remele report, condensing statements obtained from Gil Rivera, Gil Rivera, Jr., Cathy Rivera, Aquilino Flores, and David Flores, are inconsistent with the trial testimony of Elvis Perez. Gil Rivera told police that at approximately 9:45 p.m. he heard two or three shots that seemed to emanate from State Street. Gil Rivera, Jr., said he heard the sound of peeling tires. Cathy Rivera stated she looked out a window and saw a white sedan heading down Seeley Street toward Lewis Street with its rear taillights unlit. Aquilino Flores told police that after hearing a noise emanating from the rear of his property, which faces on Seeley Street, he looked out his window and saw three black men walking towards State Street and a white male walking toward Hanover Street. David Flores told police that at about 9:40 p.m. he looked out the window and observed a white car parked on Seeley Street near the rear door of his house and a few minutes later heard two or three gun shots and the sound of squealing wheels. He noticed the white car was missing and saw six black males walking towards State Street and one white male walking towards Hanover Street. The locations where David Flores observed the white car parked prior to hearing gunshots was a substantial distance from the location where Tadduni's car was ultimately found.
Elvis Perez testified that he told police for the first time, almost five years after the murder, that in November of 1981 he was a witness to a shooting on Seeley Street involving a white LTD. Perez testified that prior to the shooting he was walking down State Street and then turned right onto Seeley Street. A car that he had seen after he had purchased some crack turned right onto Seeley Street. After the car pulled over to the curb on Seeley Street, Perez saw an individual approach the car's passenger side and hand something to the driver. Perez then observed the defendant approach the vehicle and that when the defendant started to leave he heard the first person who had approached the car say something CT Page 4649 like "He is going to beat you." He testified further that the defendant approached with a pistol in his hand and when the defendant reached the passenger side of the car he heard two shots and the white car crashed into a red car that had been parked pretty close to where the white car had been stopped prior to the driver's attempt to pull away.
Although Perez in his written statement did not pinpoint the location of the shooting in his diagram, his testimony during three trials established that the scene of the shooting was approximately 50 feet north of the intersection of Seeley Street and Lewis Street. If the Flores statement had been made available and used effectively at trial, a strong argument could be made that the shooting had occurred a substantial distance from where Perez claimed he witnessed the shooting.
Edward Ortiz had been serving 7 years on federal charges for distribution of narcotics. As part of his plea agreement, he agreed to testify in several state prosecutions, one of them the present case. According to Ortiz, during the course of a conversation at the home of the President of the Latin Kings, he heard Diaz say that he had fatally shot "some white guy" in the arm with a .22 in the area of State Street and that after the shooting the car crashed around the corner. Ortiz heard Diaz say that he recognized the guy as having "beaten" one of the guys on the block before. Perez, in his testimony, placed the victim's car on Seeley Street but Ortiz' testimony certainly implied that the shooting took place on a street other than where Tadduni's vehicle had come to rest. This taken into consideration with the testimony of Carolina Rivera at the first trial that after hearing two shots she observed a white car pass by the intersection of Seeley and Hanover Streets heading toward Lewis Street and combined with the observations of the witnesses in the Remele report would have enhanced the claim of a reasonable doubt.
The court has carefully considered the three grounds for dismissal set forth in defendant's amended motion to dismiss. While it is true that the decision of the court (Ronan, J.) denied the defendant's motion to dismiss based on § 54-56 of the Connecticut General Statutes, his ruling was made long before the Remele report was eventually disclosed to the defense. This court is of the opinion that with the Remele report now before it, as well as the claims presented to Ronan, J. the amended motion to dismiss should now be granted.
Section 54-56 of the Connecticut General Statutes serves as a basis for dismissal if the court finds that "there is not sufficient evidence or cause to justify the bringing or continuing of such information or the placing of the person accused therein on trial." The discretion to dismiss an information must be guided by considerations of fundamental fairness CT Page 4650 that are ingrained in the concept of due process of law. State v.Corchado, 200 Conn. 453, 459 (1986). This statutory power, one that is rarely used, must be exercised with great caution after a complete review of the record and a thorough analysis of the proceeding. The usefulness of the Remele report more than nine years after is preparation is questionable. The testimony elicited by the defense at the evidentiary hearing in the motion to dismiss makes clear that neither David Flores nor Aqualino Flores can recall their observations. Even if the relevant portions of the Remele report were admitted, this would probably not be as effective as "live" testimony.
A close study of the transcripts makes it very apparent that the merits of the State's case rest primarily in the testimony of Ortiz and Perez. Remele's report and the testimony that could be derived therefrom could have seriously impacted their testimony if effectively used. The fact that Edward Ortiz has probably completed his seven year federal sentence in exchange for his testimony in the United States District Court as well as the Connecticut courts is probably not going to make him particularly enthusiastic about coming back and testifying in the same matter for a fourth time.
In the present case, it is undisputed that the non-disclosure by the Remele report was intentional. The fact that three juries have heard essentially the same case and have acquitted the defendant in the murder charge and have failed to arrive at a unanimous verdict on the two manslaughter cases illustrates the problem the juries had with the testimony of the two principal witnesses. The potential testimony in the Remele report would certainly have been relevant and could well have led to the defendant's acquittal. Were the information in the Remele report made available to the defense, the attack on both Perez and Ortiz might well have taken a different tack or at least provided the defense with another arrow in its bow.
Regardless of the State's good or bad faith in its failure to disclose the Remele report, the potential evidence would be material to the issue of credibility.
Dismissal of the information is granted pursuant to § 54-56 of the Connecticut General Statutes.
OWENS, J.