STATE OF CONNECTICUT *v.* JOHN MCKENNA

STATE OF CONNECTICUT *v.* JACK DIMARTINO
(10556)

SPEZIALE, C. J., HEALEY, PARSKEY, SHEA and GRILLO, Js.

Argued October 13—decision released December 14, 1982

*Thomas D. Clifford,* with whom were *Hubert J. Santos* and, on the brief, *F. Mac Buckley,* for the appellants (defendants).

*Kevin T. Kane,* assistant state's attorney, with whom, on the brief, was *Scott J. Murphy,* assistant state's attorney, for the appellee (state).

PER CURIAM. This case is before us by way of an interlocutory appeal from the judgment of the Superior Court which denied the defendants' supplemental motion to dismiss. The defendants claim that, notwithstanding our recent decisions in *State* v. *Haskins,* 188 Conn. 432, 450 A.2d 828 (1982), and *State* v. *Moeller,* 178 Conn. 67, 420 A.2d 1153, cert. denied, 444 U.S. 950, 100 S. Ct. 423, 62 L. Ed. 2d 320 (1979), because they have entered pleas of nolo contendere and have been sentenced in the federal court on charges arising from the same underlying transaction, the state is barred from bringing them to trial in Superior Court by the principles of double jeopardy, equal protection and due process of law. We do not agree.

Both the state and federal prosecutions were instituted as a result of the defendants' alleged scheme to defraud the state of Connecticut by the use of improper bidding practices on state contracts. On October 17, 1978, the defendant McKenna was arrested and charged with a total of thirty counts of larceny in the first degree, larceny in the second degree, larceny by extortion and conspiracy. On the same day, the defendant DiMartino was also arrested and charged with thirty-four counts of the same offenses. On November 28, 1978, the defendants were indicted in federal court by way of a

joint indictment alleging thirty-five counts of mail fraud, in violation of 18 U.S.C. §§ 1341,[1] 1342,[2] and conspiracy in violation of 18 U.S.C. § 371.[3]

---

[1] 18 U.S.C. § 1341 provides:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

[2] 18 U.S.C. § 1342 provides:

"Whoever, for the purpose of conducting, promoting, or carrying on by means of the Postal Service, any scheme or device mentioned in section 1341 of this title or any other unlawful business, uses or assumes, or requests to be addressed by, any fictitious, false, or assumed title, name, or address or name other than his own proper name, or takes or receives from any post office or authorized depository of mail matter, any letter, postal card, package, or other mail matter addressed to any such fictitious, false, or assumed title, name, or address, or name other than his own proper name, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

[3] 18 U.S.C. § 371 provides:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

"If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor."

The defendants' cases first came to trial in federal court in May of 1979.[4] Both defendants eventually filed pleas of nolo contendere.[5] On June 28, 1979, the defendant DiMartino, who had entered his plea to two of the counts of mail fraud in the indictment, was sentenced to concurrent terms of thirty days in jail on each count, given two years probation, and was ordered to pay a $2000 fine. The defendant McKenna, who had entered his plea to thirty-four counts of the indictment, was sentenced to one year in prison, suspended after four months incarceration, given eighteen months probation, and was ordered to pay a fine of $1000.[6]

The cases pending against the defendants in the state court were placed on the trial list in July of 1980. On November 13, 1980, the state filed a substitute information against each defendant charging twenty-seven counts of larceny in the first degree in violation of General Statutes § 53a-122 (a) (2),[7] two counts of larceny in the second degree in violation of General Statutes

---

[4] The defendants' brief indicates that the federal indictments were reached for trial in May 1979 "due to the dictates of the [Federal] Speedy Trial Act."

[5] At the time the pleas were filed, a jury had already been impaneled and sworn in.

[6] The federal District Court for the District of Connecticut, *Blumenfeld, J.*, entered both of the defendants' sentences after assessing the results of an extensive presentence report.

[7] General Statutes § 53a-122 provides in part: "(a) A person is guilty of larceny in the first degree when he commits larceny as defined in section 53a-119 and . . . (2) The value of the property or service exceeds two thousand dollars. . . ."

General Statutes § 53a-119 defines larceny as follows: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from the owner. . . ."

§ 53a-123 (a) (2),[8] and conspiracy to commit larceny in violation of General Statutes § 53a-48.[9] On November 19, 1980, the defendants filed a supplemental motion to dismiss. They claimed that any further trial of either defendant, after the federal charges had been disposed of, would violate the double jeopardy clause of the United States constitution applicable to the states through the fourteenth amendment; see *Benton* v. *Maryland,* 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969) ; which right is also implicit in the common law of Connecticut. See *State* v. *Moeller,* 178 Conn. 67, 77, 420 A.2d 1153 (1979).[10] They also claimed that the successive prosecutions would violate their rights to equal protection under the law and would amount to cruel and unusual punishment.[11] After a hearing on the matter, the trial court denied the defendants' motion to dismiss, but granted their motion to stay the trial in order for them to take an interlocutory appeal. It is the trial court's decision denying the defendants' supplemental motion to dismiss that is now before us on appeal.

[8] General Statutes § 53a-123 provides in part: "(a) A person is guilty of larceny in the second degree when: (1) The property consists of a motor vehicle, (2) the value of the property or service exceeds five hundred dollars. . . ."

[9] General Statutes § 53a-48 provides in part: "(a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[10] The defendants argue that we should reexamine and reconsider our decision in *Moeller.* As we said in *Haskins:* "That holding [*Moeller*] is of such recent vintage, and nothing having occurred in the interim to warrant reconsideration of this holding, we are not inclined to disturb it." *State* v. *Haskins,* 188 Conn. 432, 472, 450 A.2d 828 (1982). We are of the same view on this appeal.

[11] The defendants did not address the issue of cruel and unusual punishment in their brief; therefore, it is considered to be abandoned. See *Stanton* v. *Grigley,* 177 Conn. 558, 562, 418 A.2d 923 (1979).

This appeal is controlled by the cases of *State* v. *Haskins*, 188 Conn. 432, 450 A.2d 828 (1982), which had not been decided at the time the parties filed their briefs, and *State* v. *Moeller,* supra. In *Haskins,* we reaffirmed our holding in *State* v. *Moeller,* supra, that "neither federal nor state law barred sequential prosecution in our state courts for an offense for which the defendant had been acquitted or convicted in a federal court." *State* v. *Haskins,* supra, 472. In effect, the concept of "dual sovereignty"; see *State* v. *Haskins,* supra, 473, quoting *Rinaldi* v. *United States,* 434 U.S. 22, 29, 98 S. Ct. 81, 54 L. Ed. 2d 207 (1977); renders the principles of double jeopardy inapplicable to this case.[12]

Although the issue of equal protection is not properly before us, in the interests of judicial economy we will address it. The principle of dual sovereignty is also dispositive of the defendants' claim

---

[12] As noted earlier, we had not handed down our decision in *State* v. *Haskins,* 188 Conn. 432, 472, 450 A.2d 828 (1982), at the time the parties filed their briefs. In their brief, the defendants ask this court "to re-examine the decision in *Moeller* and to adapt [sic] the dissenting opinion of Justice Peters therein as the law in this case." In *Moeller* the dissenting opinion advocated the adoption of the view of the Model Penal Code (Proposed Official Draft, 1962). *State* v. *Moeller,* 178 Conn. 67, 79–80, 420 A.2d 1153 (1979).

Even under the rule as set out in Model Penal Code § 1.10 (Proposed Official Draft, 1962), the defendants could still be prosecuted under the circumstances of this case. That section bars reprosecutions in another jurisdiction "unless (a) the offense for which the defendant was formerly convicted . . . and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil . . . ." In the present case, the federal statutes under which the defendants entered their pleas, 18 U.S.C. §§ 1341 and 1342, require proof of the additional element, not required in the state charges, that the defendants used the mail to further their scheme. See footnotes 1 and 2, supra. The additional element required by General Statutes §§ 53a-122 (a) (2) and 53a-123 (a) (2) that is not required by the federal charges is the proof of value in excess of $2000 and $500,

that their rights to equal protection under the law will be violated if the state follows through with their prosecutions. The defendants in their brief argue that "[i]t is *only* because there are two sovereigns . . . that these defendants are now threatened with the loss of their double jeopardy protection." (Emphasis added.). The defendants' argument misses the point. It is precisely because two sovereigns are involved that there is no equal protection violation.[13] Both the state of Connecticut and the federal government have "the power, inherent in any sovereign, independently to determine

---

respectively. See footnotes 7 and 8, supra; see generally *State* v. *Truppi*, 182 Conn. 449, 467–68, 438 A.2d 712 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981).

The second part of the Model Penal Code test requires the purpose of the statutes involved be "to prevent a substantially different harm or evil." "The manifest purpose of the mail fraud statute is the protection of the post office from use in the execution of frauds." *United States* v. *Bohonus*, 628 F.2d 1167, 1170 (9th Cir.), cert. denied, 447 U.S. 928, 100 S. Ct. 3026, 65 L. Ed. 2d 1122 (1980), citing *Durland* v. *United States*, 161 U.S. 306, 314, 16 S. Ct. 508, 40 L. Ed. 709 (1896); see also *United States* v. *Keane*, 522 F.2d 534, 544 (7th Cir. 1975), cert. denied, 424 U.S. 976, 96 S. Ct. 1481, 47 L. Ed. 2d 746 (1976) ("The two necessary elements for violation of the mail fraud statute are formation of a scheme with intent to defraud and the use of mails in furtherance of that scheme"); *United States* v. *Pocono International Corporation*, 378 F. Sup. 1265, 1267 (S.D.N.Y. 1974). The aim of the larceny statute, on the other hand, is to prevent an owner from being permanently deprived of his property without his consent. See *State* v. *Vars*, 154 Conn. 255, 259, 224 A.2d 744 (1966). As the foregoing analysis illustrates, even under the Model Penal Code test, the state could legitimately prosecute these defendants for the crimes charged.

[13] A terse exposition of the dual sovereignty doctrine may be found in the early United States Supreme Court case of *Moore* v. *Illinois*, 55 U.S. 13, 20 (1852): "Every citizen of the United States is also a citizen of a State or territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either. The same act may be an offense or transgression of the laws of both." See *United States* v. *Lanza*, 260 U.S. 377, 43 S. Ct. 141, 67 L. Ed. 314 (1922); *State* v. *Moeller*, 178 Conn. 67, 79–80, 420 A.2d 1153 (1979).

what shall be an offense against its authority and to punish such offenses, and in doing so each 'is exercising its own sovereignty, not that of the other.'" (Citation omitted.) *United States* v. *Wheeler,* 435 U.S. 313, 320, 98 S. Ct. 1079, 55 L. Ed. 2d 303 (1978).[14] Therefore, the class of similarly situated individuals who are to be treated equally; see *United Illuminating Co.* v. *New Haven,* 179 Conn. 627, 636, 427 A.2d 830 (1980); is limited to persons charged with a crime in the state courts of Connecticut. As is evident from what we have said, any such person in Connecticut is equally subject to a state court prosecution regardless of whether that person has previously been convicted or acquitted in federal court. Therefore, there is no equal protection violation.

In oral argument before this court, counsel for the defendants vigorously contended that, despite the decision in *Haskins,* there was an alternate basis for holding that the defendants' prosecution in state court should be barred. His position was that it was fundamentally unfair to bring these defendants to trial again after serving sentences resulting from similar federal charges. Therefore, he argues that this court accept responsibility for supervising what occurs in the trial court prosecution in this case and to dismiss the prosecution. No law was cited

[14] In *Wheeler* the court reiterated that "[i]n *Bartkus* v. *Illinois,* 359 U.S. 121 [79 S. Ct. 676, 3 L. Ed. 2d 684 (1959)] and *Abbate* v. *United States,* 359 U.S. 187 [79 S. Ct. 666, 3 L. Ed. 2d 729 (1959)], this Court reaffirmed the well-established principle that a federal prosecution does not bar a subsequent state prosecution of the same person for the same acts, and a state prosecution does not bar a federal one. The basis for this doctrine is that prosecutions under the laws of separate sovereigns do not, in the language of the Fifth Amendment, 'subject [the defendant] for the same offence to be twice put in jeopardy.'" *United States* v. *Wheeler,* 435 U.S. 313, 316–17, 98 S. Ct. 1079, 55 L. Ed. 2d 303 (1978).

as to this court's authority to undertake such action; their claim, however, is that the concept is rooted in the *Haskins* decision. The defendants also argue in their brief that we reach beyond *Moeller,* and therefore, *Haskins,* to make the "equitable analysis" we are empowered to make and "grant these defendants the protection against double jeopardy offered them by the United States Constitution and the common law, and Article First, Section 8 of the Connecticut Constitution."[15] We have already held that the doctrine of "dual sovereignty" renders the principles of double jeopardy inapplicable to this case. Moreover, as will be seen, we cannot accept their claim that the state prosecution violates the "due process clause" of article first, § 8, of the Connecticut constitution, bottomed, as it is, on their "fairness" approach.

In *Haskins* we recognized that the problem of sequential prosecution "does not arise in the federal courts because there the Attorney General of the United States, out of consideration of fairness to defendants and out of regard for efficient and orderly law enforcement, has foreclosed federal prosecutions once a person has been tried and acquitted or convicted in a state court for an offense that is also an offense against the United States. *Petite* v. *United States,* 361 U.S. 529, 80 S. Ct. 450, 4 L. Ed. 2d 490 (1960)." *State* v. *Haskins,* supra, 472. We then went on to say: "Were a similar policy to be adopted by the several state's attorneys as a matter of reciprocity as well as a matter of fairness, judicial assistance for the implementation of this policy would seem to be indicated. *Rinaldi*

---

[15] Although the Connecticut constitution has no double jeopardy clause, we have recognized that the prohibition against double jeopardy "is implicit in our common law." *State* v. *Moeller,* 178 Conn. 67, 77, 420 A.2d 1153 (1979).

v. *United States,* 434 U.S. 22, 29, 98 S. Ct. 81, 54 L. Ed. 2d 207 (1977)." *State* v. *Haskins,* supra, 472–73. We are not aware that any such policy has yet been adopted and we are not empowered to dictate one. The court went on to note that the state's attorneys have broad discretion in deciding what crimes to charge. *State* v. *Haskins,* supra, 473–74, see *State* v. *Tedesco,* 175 Conn. 279, 289, 397 A.2d 1352 (1978); *State* v. *Villafane,* 171 Conn. 644, 664, 372 A.2d 82 (1976), cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 558 (1977). "So long as he acts within the jurisdiction of his office it is not appropriate for a court to set policy for the performance of his prosecutorial function." *State* v. *Haskins,* supra, 474, citing *State* v. *Carr,* 172 Conn. 608, 610–11, 376 A.2d 74 (1977).

This does not leave the defendants unprotected from the vagaries of prosecutorial discretion. "The primary duty of a prosecutor is to seek justice, not to merely convict." *State* v. *Jones,* 180 Conn. 443, 455, 429 A.2d 936 (1980); see *State* v. *Moynahan,* 164 Conn. 560, 568, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973); see also Code of Professional Responsibility, EC 7-13, Practice Book, p. 37. A state's attorney does not, however, overstep the bounds of propriety unless it is shown that the decision to prosecute is based primarily upon vindictiveness towards the defendant, or upon an unjustifiable standard such as race, sex, religion or other arbitrary classification. See *State* v. *Haskins,* supra, 474; *State* v. *Villafane,* supra, 664; *State* v. *Anonymous (1980-7),* 36 Conn. Sup. 338, 340, 420 A.2d 910 (1980).[16] No such show-

---

[16] The United States Supreme Court has adopted a similar standard. See *Oregon* v. *Kennedy,* 456 U.S. 667, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982) (intentional prosecutorial misconduct required before double jeopardy will bar a subsequent prosecution after a mistrial

ing has been made in this case; the defendants did not present any evidence on this claim at the hearing on the motion to dismiss. Rather, the record merely contains a bald assertion that the motive of the chief state's attorney in bringing this case was that he was dissatisfied with the sentences the defendants had received in federal court. Even if this allegation were true, it would not, in and of itself, provide a basis for the relief requested on the record before us. See *Oyler* v. *Boles*, 368 U.S. 448, 456, 82 S. Ct. 501, 7 L. Ed. 2d 446 (1962).

There is no error.

has been declared at the defendant's request); *Bordenkircher* v. *Hayes*, 434 U.S. 357, 364, 98 S. Ct. 663, 54 L. Ed. 2d 604, reh. denied, 435 U.S. 918, 98 S. Ct. 1477, 55 L. Ed. 2d 511 (1978) (" '[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation' so long as 'the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification' "). (Citations omitted.)