STATE OF CONNECTICUT *v.* DARYL KINCHEN
(SC 15791)

Borden, Berdon, Palmer, McDonald and Peters, Js.

Argued December 4, 1997—officially released March 3, 1998

*Robert J. Scheinblum*, assistant state's attorney, with whom, on the brief, were *Eugene J. Callahan*, state's attorney, and *Richard J. Colangelo, Jr.*, assistant state's attorney, for the appellant (state).

*Mark Rademacher*, assistant public defender, for the appellee (defendant).

*Opinion*

PALMER, J. The sole issue in this appeal, taken by the state with the permission of the trial court,[1] is whether the trial court had the authority to dismiss,

---

[1] General Statutes § 54-96 provides: "Appeals by the state from Superior Court in criminal cases. Appeals from the rulings and decisions of the Superior Court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the Supreme Court or to the Appellate Court, in the same manner and to the same effect as if made by the accused." The state appealed to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

sua sponte, a pending misdemeanor charge against the defendant, Daryl Kinchen, because, in the court's view, the case was not sufficiently important to warrant the time and expense of a jury trial. We conclude that, in the absence of compliance with the relevant statute, General Statutes § 54-56, the trial court did not have such authority. Accordingly, we reverse the judgment of the court dismissing the charge.

The facts relevant to this appeal are undisputed. On October 26, 1995, the defendant was charged by misdemeanor summons and complaint with criminal trespass in the first degree in violation of General Statutes § 53a-107.[2] According to the police report on which the complaint was based, the defendant, a former employee of Trudy Toy, Inc. (Trudy Toy), in Norwalk, was fired from his job at that company's manufacturing facility on October 20, 1995. Peter Ogilve, a supervisor with Trudy Toy, told the police that the defendant's employment had been terminated for poor performance and, because of reports that he had been stealing items from an adjacent company that shares warehouse space with Trudy Toy.

On October 26, 1995, Ogilve arrived at the warehouse to find the defendant arguing with another Trudy Toy supervisor, Mario Coppolla. According to Coppolla, he observed the defendant in the warehouse space used by the company adjacent to Trudy Toy, in the vicinity

---

[2] General Statutes § 53a-107 provides: "Criminal trespass in the first degree: Class A misdemeanor. (a) A person is guilty of criminal trespass in the first degree when: (1) Knowing that he is not licensed or privileged to do so, he enters or remains in a building or any other premises after an order to leave or not to enter personally communicated to him by the owner of the premises or other authorized person; or (2) he enters or remains in a building or any other premises in violation of a restraining order issued pursuant to section 46b-15 or a protective order issued pursuant to section 46b-38c or 54-1k by the Superior Court.

"(b) Criminal trespass in the first degree is a class A misdemeanor."

of a pallet of watches. The defendant, who was carrying a bag containing three boxes, informed Coppolla that he had come to the warehouse to speak to Ogilve about his recent job termination. Ogilve instructed the defendant to leave the property and not to return for any reason. Ogilve then observèd the defendant leave the premises.[3] Several minutes after the defendant had departed, however, two other Trudy Toy employees saw the defendant return to the area of the warehouse where the pallet of watches was located.

Ogilve reported these events to David Wrinn, a Norwalk police officer, who proceeded to the defendant's home to speak to him about the incident. The defendant denied that he had returned to the warehouse after Ogilve had ordered him to leave. The defendant further stated that the bag he had been carrying contained pamphlets for distribution to a group that he was organizing. Wrinn then served the defendant with a misdemeanor summons and complaint charging him with first degree criminal trespass.

The defendant appeared in court on November 29, 1995, at which time a public defender was appointed to represent him. The defendant entered a plea of not guilty to the charge, and elected to be tried by a jury.

The defendant next appeared in court the following week. At that time, his counsel informed the trial court, *Stevens, J.*, that the state had "made an offer" to the defendant, but that the defendant "doesn't want it. He says he's innocent and wants his trial." The case then was continued for several weeks.

---

[3] According to the police report, Coppolla asked Ogilve why he had allowed the defendant to leave the premises with boxes containing what Coppolla suspected were watches that the defendant had stolen from the warehouse. Ogilve responded that he had thought that Kinchen had arrived at the warehouse with the boxes and did not realize that they might have contained stolen merchandise.

At the defendant's next court appearance on January 5, 1996, his attorney informed the trial court that the defendant, who by then had been incarcerated for a parole violation stemming from the filing of the criminal trespass charge,[4] had forwarded to the court a motion for a speedy trial. Although the clerk's office had not yet received the defendant's motion, the court placed the case on the firm jury list and scheduled the case for a pretrial conference.

On January 31, 1996, the defendant again appeared in court. Counsel for the defendant informed the trial court that the defendant wanted the case to be dismissed. Defense counsel further stated, however, to the court: "I've done my research on this and I do not see grounds under [Practice Book § 815][5] for dismissal." Because a pretrial conference on the defendant's case already had been conducted, the trial court ordered that the case be placed on one hour notice for trial.

---

[4] At the time of the alleged criminal trespass, the defendant was on parole from a fifteen year prison sentence that had been imposed for his 1988 conviction of manslaughter in the second degree with a firearm and carrying a pistol without a permit. As a result of the first degree criminal trespass charge, the defendant's parole was revoked and he commenced service of the remainder of his fifteen year sentence.

[5] Practice Book § 815 provides: "[Motion To Dismiss]——Matters To Be Raised

"The following defenses or objections, if capable of determination without a trial of the general issue, shall, if made prior to trial, be raised by a motion to dismiss the information:

"(1) Defects in the institution of the prosecution including any grand jury proceedings;

"(2) Defects in the information including failure to charge an offense;

"(3) Statute of limitations;

"(4) Absence of jurisdiction of the court over the defendant or the subject matter;

"(5) Insufficiency of evidence or cause to justify the bringing or continuing of such information or the placing of the defendant on trial;

"(6) Previous prosecution barring the present prosecution;

"(7) Claim that the defendant has been denied a speedy trial;

"(8) Claim that the law defining the offense charged is unconstitutional or otherwise invalid; or

"(9) Any other grounds."

The defendant appeared in court again on March 20, 1996. The trial court, *Dean, J.*,[6] indicated that the case was ready for trial, during the following colloquy between the trial court and the deputy assistant state's attorney:

"The Court: [Y]ou know, we have a lot of serious cases on the jury [list]. We have a burglary [case] right behind this. We have six cases [for which] subpoenas are out behind this case, and in twenty-six years I have never tried a trespassing case to the jury. Never. And I've read this police report and it's simple trespass.[7] [It c]ould either be an infraction or [it] could be a trespass first, I suppose. No one was hurt, no injuries. It was just a plain old trespass. Now we have a situation here where clerks are being let go, we have backlogs, and quite frankly, I would be embarrassed to put this [case] before a jury who has taken their time off from work. They don't want to be here and . . . sit here and . . . listen to something like this. I don't know why you gentlemen cannot resolve this thing. However, I'm going to resolve it. [Deputy assistant state's attorney Richard J.] Colangelo—

"Mr. Colangelo: Yes, Your Honor. I do understand your position and I share your sympathies. Unfortunately—

"The Court: . . . Absolutely. And this is for the benefit of—the people of the state of Connecticut [whose] taxes pay for this court and pay for the jurors, and in the great scheme of things when we have burglaries and robberies on the juries that are not being reached

---

[6] The record reflects that Judge Stevens had presided over the defendant's previous court appearances in this case.

[7] General Statutes § 53a-110a provides: "Simple trespass: Infraction. (a) A person is guilty of simple trespass when, knowing that he is not licensed or privileged to do so, he enters any premises without intent to harm any property.

"(b) Simple trespass is an infraction."

and we have something like this—Mr. Colangelo, if you want to substitute an information for trespass—what do you call the simple one, infraction of trespass. I will try it on the spot as a court.[8] However, if you don't want to do that, I'm going to dismiss this because—

"Mr. Colangelo: Actually, Your Honor, I do share your concerns [and] sympathy, but it is the defendant that elects a jury trial and the [s]tate does not have any control over that.

"The Court: . . . Well, I'm saying—

"Mr. Colangelo: I could very definitely, I could change the charge, but—

"The Court: I'm saying if you would like to get a conviction—

"Mr. Colangelo: No, sir. I am not going to reduce the charge. The defendant is charged with a misdemeanor.

"The Court: Okay, dismissed. Okay.

"Mr. Colangelo: Could I ask for a basis?

"The Court: In the interest of—

"Mr. Colangelo: Permission to appeal. Permission to appeal.

"The Court: Do whatever you want.

"Mr. Colangelo: Thank you.

---

[8] Because the crime of first degree criminal trespass is a class A misdemeanor and, consequently, carries a maximum prison term of one year; see General Statutes § 53a-36; the defendant had a right to a jury trial on that charge. See General Statutes § 54-82b (a); see also *Lewis* v. *United States*, 518 U.S. 322, 325–27, 116 S. Ct. 2163, 135 L. Ed. 2d 590 (1996). Because simple trespass under General Statutes § 53a-110a is an infraction for which the maximum penalty may not exceed $199; see General Statutes § 51-164m; the defendant would *not* have been entitled to a jury trial on that charge. See General Statutes § 54-82b (a).

"The Court: In the interest of justice, the basis that I'm dismissing this is because right behind it is a burglary case. Now this was set down for a speedy trial and it's just a matter of priorities. We can't try all the cases, and when I weigh this case against the burglary or other cases we have here and the expense involved in trying this, and I've examined—I mean nobody—I've examined the police report. Nobody was hurt. It was just a plain old trespass where he had an argument with his former employer.

"Mr. Colangelo: [The defendant] was instructed to leave, [and he] did come back later, Your Honor.

"The Court: . . . was instructed to leave and didn't leave. And certainly the infraction would be appropriate in this matter, and—

"Mr. Colangelo: Could I have the report back?

"The Court: . . . I just gave it to the clerk. And under the circumstances whereby we have such a backlog, and I talked to [supervisory assistant state's attorney Steven] Weiss and he's got thirty jury trials, the next one is a burglary, and—

"Mr. Colangelo: We have approximately a hundred— well, probably—

"The Court: And for me to spend a week selecting a jury and trying this case, I'm not going to do it. So dismissed.

"Mr. Colangelo: Thank you, Your Honor.

"The Court: All right, the case is dismissed.

"[James Ginnochio, Defense Counsel]: Thank you.

"The Court: Okay. And let's see how much the appeal costs you, Mr. Colangelo. You want to waste some more money?

"Mr. Colangelo: I'm just doing my job, Judge."

The proceeding thereupon concluded.

On appeal, the state claims that, in the circumstances of this case, the trial court's dismissal of the first degree criminal trespass charge constituted an impermissible usurpation of the prosecutor's authority to charge the defendant in violation of the doctrine of separation of powers. The defendant contends that the trial court's dismissal of the charge was not constitutionally impermissible and, further, that the dismissal was authorized by General Statutes § 54-56.[9] We agree with the state.

The separation of powers provision of article second of the Connecticut constitution provides in relevant part: "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another." "[T]he primary purpose of this constitutional doctrine is to prevent commingling of different powers of government in the same hands. . . . The constitution achieves this purpose by prescribing limitations and duties for each branch that are essential to each branch's independence and performance of assigned powers. . . . [Thus, t]he separation of powers doctrine serves a dual function: it limits the exercise of power within each branch, yet ensures the independent exercise of that power. . . . [I]n deciding whether one branch's actions violate the constitutional mandate of the separation of powers doctrine, the court will consider if the actions constitute:

---

[9] General Statutes § 54-56 provides: "Dismissal of information by court. All courts having jurisdiction of criminal cases shall at all times have jurisdiction and control over informations and criminal cases pending therein and may, at any time, upon motion by the defendant, dismiss any information and order such defendant discharged if, in the opinion of the court, there is not sufficient evidence or cause to justify the bringing or continuing of such information or the placing of the person accused therein on trial."

(1) an assumption of power that lies exclusively under the control of another branch; or (2) a significant interference with the orderly conduct of the essential functions of another branch." (Citations omitted.) *Massameno* v. *Statewide Grievance Committee,* 234 Conn. 539, 551–53, 663 A.2d 317 (1995).

The state's attorneys, who are responsible for prosecuting violations of the criminal laws of this state, are executive branch officials. Id., 558–59; see General Statutes § 51-276; see also Conn. Const., amend. XXIII. "There can be no doubt that [t]he doctrine of separation of powers requires judicial respect for the independence of the prosecutor." (Internal quotation marks omitted.) *Massameno* v. *Statewide Grievance Committee,* supra, 234 Conn. 574. Prosecutors, therefore, have "a wide latitude and broad discretion in determining when, who, why and whether to prosecute for violations of the criminal law." (Internal quotation marks omitted.) *State* v. *Corchado,* 200 Conn. 453, 460, 512 A.2d 183 (1986). This broad discretion, which necessarily includes "deciding which citizens should be prosecuted and for what charges they are to be held accountable"; *Massameno* v. *Statewide Grievance Committee,* supra, 575; "rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, the [state's] enforcement priorities, and the case's relationship to the [state's] overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake. Judicial supervision in this area, moreover, entails systemic costs of particular concern. Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial

effectiveness by revealing the [state's] enforcement policy. All these are substantial concerns that make the courts properly hesitant to examine the decision whether to prosecute." *Wayte* v. *United States*, 470 U.S. 598, 607–608, 105 S. Ct. 1524, 84 L. Ed. 2d 547 (1985).[10] Furthermore, "[j]udicial deference to the decisions of these executive officers . . . also stems from a concern not to unnecessarily impair the performance of a core executive constitutional function." (Citation omitted; internal quotation marks omitted.) *United States* v. *Armstrong*, 517 U.S. 456, 465, 116 S. Ct. 1480, 134 L. Ed. 2d 687 (1996).

For these reasons, "unless constitutional or other compelling reasons require otherwise, we abstain from setting policy for the performance of the prosecutorial function." *State* v. *Ellis*, 197 Conn. 436, 478, 497 A.2d 974 (1985); see *State* v. *Haskins*, 188 Conn. 432, 474, 450 A.2d 828 (1982) ("[s]o long as [the prosecutor] acts within the jurisdiction of his office it is not appropriate for a court to set policy for the performance of his prosecutorial function"). Consistently with this principle, the court, "[i]n the absence of statutory authority . . . has no power of its own motion to dismiss a criminal prosecution unless there is a fundamental legal

---

[10] See also *Massameno* v. *Statewide Grievance Committee*, supra, 234 Conn. 575 ("[W]e are not unmindful of the fundamental importance of the unique role [that prosecutors] play in our society. Because of this role, we also recognize that judicial intrusion may disproportionately impact particular aspects of the prosecutorial function. For example, the basis of prosecutorial charging decisions is one area not generally well suited for broad judicial oversight because it 'involve[s] exercises of judgment and discretion that are often difficult to articulate in a manner suitable for judicial evaluation.' *United States* v. *Redondo-Lemos*, 955 F.2d [1296, 1299 (9th Cir. 1992)]. The judicial branch, and, concomitantly, the defendant are not in the best position to consider the various factors that prosecutors weigh, such as the strength of the evidence, the visibility of the crime, the availability of resources and possible deterrent effects. Nor is the judicial branch anxious to consider the validity of various rationales advanced for particular charging decisions.").

defect in the information or indictment (such as want of jurisdiction or form of the information), or a constitutional defect such as denial of the right to a speedy trial . . . ."[11] *State* v. *Carr*, 172 Conn. 608, 610–11, 376 A.2d 74 (1977); *State* v. *Dills*, 19 Conn. App. 495, 500, 563 A.2d 733 (1989).

In this case, the trial court identified no constitutional infirmity or other fundamental defect in the state's exercise of its prosecutorial authority to warrant dismissal of the first degree criminal trespass charge. Moreover, the trial court did not purport to be acting under any legislative grant of authority in dismissing the charge. It is settled law that a trial court lacks the power to terminate a prosecution against an accused in such circumstances. *State* v. *Carr*, supra, 172 Conn. 610–11; *State* v. *Dills*, supra, 19 Conn. App. 500.

The defendant claims that, although the trial court did not expressly invoke § 54-56 in dismissing the criminal trespass charge, we nevertheless may sustain the court's judgment under that statutory section, which authorizes a court to dismiss pending criminal charges if "there is not sufficient evidence or cause to justify" the continued prosecution of the defendant.[12] See, e.g.,

---

[11] Of course, "the breadth of discretion that our country's legal system vests in prosecuting attorneys carries with it the potential for both individual and institutional abuse." *Bordenkircher* v. *Hayes*, 434 U.S. 357, 365, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978). Defendants, however, are not "unprotected from the vagaries of prosecutorial discretion"; *State* v. *McKenna*, 188 Conn. 671, 680, 453 A.2d 435 (1982); for courts will not tolerate the exercise of that discretion when it is shown to be discriminatory, vindictive or otherwise improper. Id. The defendant makes no claim here of an abuse of prosecutorial discretion.

[12] We note that § 54-56 provides for the dismissal of a case "upon motion by the defendant." It is undisputed that, in this case, the defendant never moved for dismissal of the first degree criminal trespass charge, either under § 54-56 or under any other statutory provision. For purposes of this appeal, however, we assume, without deciding, that the defendant's failure to seek a dismissal of the charge under § 54-56 is not fatal to his claim. Cf. *State* v. *Ross*, 189 Conn. 42, 48–49, 454 A.2d 266 (1983) (state may seek dismissal under § 54-56 even though statute contains no express authorization for

*Latimer* v. *Administrator, Unemployment Compensation Act*, 216 Conn. 237, 252, 579 A.2d 497 (1990) (appellate court may rely upon alternative grounds supported by record to uphold trial court's judgment); *State* v. *Assuntino*, 180 Conn. 345, 353, 429 A.2d 900 (1980) (same). Even if we assume, arguendo, that the trial court was acting pursuant to the authority vested in it under § 54-56, we disagree with the defendant that the dismissal of the first degree criminal trespass charge was proper.

The defendant first claims that the record supports the trial court's dismissal of the criminal trespass charge under the evidentiary insufficiency prong of § 54-56. This contention is without merit for two reasons. First, it is clear from the record that the trial court did not dismiss the charge on the ground of evidentiary insufficiency. Although the court expressed the opinion that, in light of the nature of the defendant's alleged conduct as set forth in Wrinn's report, the state *ought* to reduce the charge from first degree criminal trespass to simple trespass, the court nevertheless acknowledged that the report provided a factual basis for the first degree criminal trespass charge.[13]

Furthermore, the information contained in the police report, if proven, was sufficient to establish the crime of first degree criminal trespass. In determining whether the evidence proffered by the state is adequate to avoid dismissal, such proof must be viewed in the light most favorable to the state. See *State* v. *Patterson*, 213 Conn. 708, 717, 570 A.2d 174 (1990); *State* v. *Morrill*, 193 Conn. 602, 611, 478 A.2d 994 (1984). "In order to

motion thereunder by state); *State* v. *Smith*, 40 Conn. App. 789, 796 n.9, 673 A.2d 1149, cert. denied, 237 Conn. 915, 675 A.2d 886 (1996) (same).

[13] It is well settled that when a defendant's conduct allegedly violates more than one criminal statute, absent a showing of discrimination the state may prosecute under either. See *United States* v. *Batchelder*, 442 U.S. 114, 123–24, 99 S. Ct. 2198, 60 L. Ed. 2d 755 (1979).

convict the defendant of criminal trespass in the first degree [under § 53a-107], the state [has] to prove beyond a reasonable doubt the following essential elements of that offense: (1) that the defendant, knowing he was not privileged or licensed to do so, entered or remained in a building; and (2) that the defendant committed that act after an order to leave or not to enter had been personally communicated to him by the owner or other authorized person." *State* v. *LoSacco*, 12 Conn. App. 172, 174–75, 529 A.2d 1348 (1987). Because the facts set forth in the police report, viewed most favorably to the state, satisfy those statutory requirements, the defendant was not entitled to dismissal of the first degree criminal trespass charge under the sufficiency prong of § 54-56.[14]

Alternatively, the defendant claims that the trial court properly dismissed the charge in the exercise of its discretion under the insufficient cause prong of § 54-56. We reject this argument also.

We begin our analysis of the defendant's claim by noting that a trial court is empowered to dismiss a case for insufficient cause under § 54-56 only in the most compelling of circumstances. *State* v. *Corchado*, supra, 200 Conn. 460. Because discretionary prosecutorial decisions, including the decision whether to proceed to trial, ordinarily are unreviewable by the court absent a showing of prosecutorial impropriety, the power to

---

[14] The defendant asserts that the police report "does not show that [the] defendant ever returned to that part of the warehouse under [the] control of Trudy Toy . . . [n]or does the report show that anyone with authority over the . . . portion of the warehouse where [the] defendant was last seen ever told the defendant to leave." We disagree. The police report indicates that Trudy Toy shares the warehouse space with another company, and that even though Ogilve, a Trudy Toy supervisor, told the defendant to leave the warehouse, two employees later observed him in the area of the warehouse used by the other company. A fact finder reasonably could infer that, in the circumstances, Ogilve was authorized to order the defendant to leave the entire warehouse.

render a dismissal under § 54-56 for insufficient cause is to "be sparingly exercised and then only with great caution and awareness of the probable consequences." Id., 464. In order to ensure that this discretion is exercised in accordance with these principles, it is essential for "the court explicitly to weigh all the competing factors and considerations of fundamental fairness to both sides—the defendant, the state and society, and presumably the victim. . . . This difficult and delicate process necessarily involves a careful consideration by the court of such factors as the strength of the state's case, the likelihood of conviction, the severity of the crime, its effect on the victim, the strength of the defendant's defense, the defendant's personal situation, and all the other myriad factors that underlie a judgment regarding fundamental fairness." *State* v. *Dills*, supra, 19 Conn. App. 503–504; see *State* v. *Daniels*, 209 Conn. 225, 238, 550 A.2d 885 (1988), cert. denied, 489 U.S. 1069, 109 S. Ct. 1349, 103 L. Ed. 2d 817 (1989); *State* v. *Corchado*, supra, 458–59. Thus, a trial court's invocation of its authority to dismiss a case under the insufficient cause prong of § 54-56 can be justified only when: (1) the court expressly and carefully has considered all of the relevant competing factors; and (2) dismissal is supported by overriding equitable considerations.

The defendant contends that the trial court properly applied the necessary balancing test and concluded, in the reasonable exercise of its discretion, that insufficient cause existed to justify the defendant's prosecution. We do not agree that the trial court carefully weighed the relevant considerations, nor are we persuaded, on the basis of the record before us, that dismissal was warranted.

It is apparent that, in the trial court's view, the defendant's misdemeanor case was not sufficiently important, in light of other pending felony cases also ready for trial, to warrant the expenditure of the time

and resources necessary for a jury trial. There is no indication, however, that the court, due to a backlog of cases or to a lack of resources or both, was faced with the likelihood that any other case would have to be dismissed, for speedy trial reasons or otherwise. We need express no view, therefore, as to whether, or in what circumstances, a trial court properly might exercise its extraordinary power under § 54-56 to dismiss a case primarily for reasons of judicial administration. Suffice it to say that there is absolutely no basis in the record of this case to support the court's dismissal, for administrative reasons, of the first degree criminal trespass charge.

The other reasons articulated by the trial court for dismissing the charge also fall short of satisfying the stringent requirements of § 54-56. That the trial court had "never tried a trespassing case to the jury . . . in twenty-six years [on the bench]" has no bearing on the question of whether insufficient cause existed to justify the prosecution in *this* case. Similarly irrelevant is the court's view that a jury trial is not warranted in this case and, further, that a jury would not "want to" decide such a case. Because the law guarantees a right to a jury trial for misdemeanor trespass, the court's personal opinion on the issue is without legal significance. Moreover, so long as the facts warranted a charge of first degree criminal trespass, the prosecutor was entitled to pursue a conviction of that offense rather than of the infraction of simple trespass. See footnote 13. Finally, the fact that "[n]o one was hurt [or] injur[ed]" as a result of the defendant's alleged criminal trespass provides no support for the court's dismissal of the charge, for the state is not required to prove that anyone was "hurt" or "injur[ed]" in a prosecution under § 53a-107.

The defendant also claims that the trial court was justified in dismissing the first degree criminal trespass

charge because the court reasonably believed that the defendant's alleged offense was minor and, consequently, that no significant period of incarceration likely would be imposed. Even if we assume that the record adequately reflects the court's belief regarding these two related issues, we do not agree with the defendant that § 54-56 authorizes a trial court to dismiss a pending criminal case simply because it views the offense as not sufficiently serious to justify a prosecution. It is the responsibility of the legislature, not the judiciary, to determine what conduct shall be deemed criminal, and it is the responsibility of the state's attorneys, not the judiciary, to determine "when, who, why and whether to prosecute for violations of the criminal law." *State* v. *Corchado*, supra, 200 Conn. 460.

The defendant further maintains that because he already had served 140 days in prison due to the parole violation stemming from the first degree criminal trespass charge, the trial court reasonably could have concluded that, even if the defendant were to have been convicted of first degree criminal trespass, he likely would not have received any significant term of imprisonment for that offense. This argument also is unavailing because the record does not reflect that the trial court ever considered this issue before rendering its judgment of dismissal. In light of the sensitive balancing test required under § 54-56, we will not presume that the trial court considered factors to which absolutely no reference was made, either by the court or by the parties, prior to the court's dismissal of the charge. Indeed, because this issue was not raised, the trial court also never considered the fact that the defendant, at the time of the alleged criminal trespass, already was on parole from a fifteen year prison sentence for his conviction of manslaughter in the second degree with a firearm and carrying a pistol without a permit. See footnote 4 of this opinion.

The defendant also contends that the trial court, in dismissing the first degree criminal trespass charge, reasonably could have considered the fact that, even though the defendant had requested a speedy trial, he still had not been tried 140 days after the filing of the charge. Again, however, there is nothing in the record of the § 54-56 proceedings to indicate that the trial court took account of this fact. Furthermore, the defendant concedes that because his pro se speedy trial motion was not received by the clerk's office until February 9, 1996, the state had 120 days from that date, until June 8, 1996, within which to try the defendant. In these circumstances, we disagree with the defendant that his failure to receive a speedier trial could have provided a basis for dismissal under § 54-56.

Contrary to the defendant's claim, *State* v. *Corchado*, supra, 200 Conn. 453, provides no support for the judgment of dismissal rendered in this case. In *Corchado*, the defendant was facing retrial almost two years after his conviction of manslaughter in the first degree had been reversed on appeal. In the meantime, the defendant already had served his sentence and had been released from parole. Id., 454–55. In the highly unusual circumstances of that case, described as "unique" both by the trial court and by this court; see id., 458, 461, 464; the trial court, after engaging in a thorough balancing of all the relevant considerations, concluded that because there was no reasonable likelihood that the defendant could be sentenced to further imprisonment, insufficient cause existed to retry the defendant. Consequently, the court granted the defendant's motion to dismiss under § 54-56. In light of the careful and reasoned exercise of discretion by the trial court, we affirmed the judgment of dismissal. Id., 463–64.

By contrast, the trial court in this case failed to weigh the factors relevant to the determination of whether sufficient cause existed to justify the prosecution, nor

did it engage in the careful and sensitive balancing of interests required under § 54-56.[15] See, e.g., *State* v. *Daniels*, supra, 209 Conn. 238 (trial court properly weighed interests of state, society and defendant before imposing life sentence on defendant, rather than requiring new sentencing hearing, after jury could not reach unanimity required for imposition of death penalty). Indeed, it is clear from the record that the trial court took the bench fully intending to dismiss the charge unless the prosecutor reduced the charge to simple trespass. Furthermore, the concerns that motivated the trial court to dismiss the first degree criminal trespass charge hardly compare with the "Gordian knot-like problem presented by the competing interests" in *State* v. *Corchado*, supra, 200 Conn. 464.

Thus, because the trial court failed to determine that a compelling justification existed for its dismissal of the first degree criminal trespass charge, we conclude that the dismissal constituted an improper usurpation of an essential prosecutorial function. Having established that the court exceeded its authority in terminating the prosecution of the defendant, the state is entitled to proceed with its case against the defendant.

The judgment of the trial court is reversed and the case is remanded for further proceedings in accordance with law.

In this opinion the other justices concurred.

---

[15] As the Appellate Court has noted, there appears to be no reported case in which a pending charge has been dismissed under § 54-56 prior to at least one trial on that charge. *State* v. *Dills*, supra, 19 Conn. App. 503. Although we, like the Appellate Court, "are not prepared to say that an informed judgment about such factors can never be reached short of trial, certainly such a judgment can be better formed after the court has had the opportunity to view at least one trial of the charges contained in the information sought to be dismissed for insufficient cause." Id., 504.