******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* CHERYL J. MARTONE
(AC 36350)

Beach, Prescott and Mullins, Js.

*Argued March 12—officially released October 6, 2015*

(Appeal from Superior Court, judicial district of Ansonia-Milford, geographical area number twenty-two, Markle, J.)

*Laila Haswell*, senior assistant public defender, for the appellant (defendant).

*Brett R. Aiello*, special deputy assistant state's attorney, with whom, on the brief, were *Kevin D. Lawlor*, state's attorney, *Alexander C. Beck*, assistant state's attorney, and *Laurie N. Feldman*, special deputy assistant state's attorney, for the appellee (state).

*Opinion*

MULLINS, J. The defendant, Cheryl J. Martone, appeals from the judgment of conviction of one count of criminal trespass in the first degree in violation of General Statutes § 53a-107 (a) (1). On appeal, she claims: (1) There was insufficient evidence to support her conviction of criminal trespass in the first degree; (2) the trial court improperly declined to instruct the jury on the infraction of simple trespass, General Statutes § 53a-110a, which the defendant claims is a lesser included offense of criminal trespass in the first degree; (3) the court improperly admitted certain testimony of a police officer; and (4) the court gave an improper and harmful jury instruction on the elements of order and knowledge. We affirm the judgment of the trial court.

The following facts are relevant to our consideration of the defendant's appeal. The defendant and R.G. had a son together. A few months after his birth, their intimate relationship ended.[1] Following their separation, their son lived with the defendant for approximately twelve years. Near the end of 2009, however, the son went to live at the home of R.G., R.G.'s girlfriend, T.P., and T.P.'s two children (residence or property). R.G. obtained sole legal custody of his son, and the defendant had reasonable rights of visitation, which she exercised regularly. R.G. and T.P., however, told the defendant that they did not want her at their residence. T.P. also telephoned the police on several occasions, and, on those occasions, the police informed the defendant that she should not go to the residence.

On her son's sixteenth birthday, September 19, 2011, the defendant went from her Westport home to the train station on her bicycle. She then took her bicycle with her as she traveled by train to New Haven, took a bus, and then rode her bicycle from the bus stop to the residence. She had hoped to see her son and give him some birthday gifts that she had brought along with her. The defendant was unable to make contact with her son via telephone, so she went onto the porch of the residence and rang the doorbell. When no one answered the door, the defendant left the gifts on a chair on the porch and went back onto the sidewalk. She rode her bicycle to a nearby parking lot and watched to see if her son came out of the house. Shortly thereafter, T.P. returned home, and she saw the defendant. R.G. also returned home and saw the defendant in the parking lot, where she remained for a couple of minutes before leaving the area on her bicycle. R.G. and T.P. decided to notify the police and to request that the defendant be arrested for trespassing. The defendant later was arrested and charged with criminal trespass in the first degree, and she was found guilty by a jury. After accepting the jury's verdict, the court rendered judgment of conviction and sentenced the defendant to a one year term of imprisonment, execution suspended

after sixty days, with eighteen months probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant claims that there was insufficient evidence to support her conviction. Specifically, she argues that the state failed to prove, beyond a reasonable doubt, that she knew that she was not licensed or privileged to go onto the property where her son lived, or that an owner or authorized person personally communicated to her an order that she not enter the property. We disagree.

"The standard of review for a claim involving the sufficiency of the evidence employs a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Samms*, 139 Conn. App. 553, 560–61, 56 A.3d 755 (2012), cert. denied, 308 Conn. 902, 60 A.3d 287 (2013).

Section 53a-107 provides in relevant part: "(a) A person is guilty of criminal trespass in the first degree when: (1) Knowing that such person is not licensed or privileged to do so, such person enters or remains in a building or any other premises after an order to leave or not to enter personally communicated to such person by the owner of the premises or other authorized person . . . ."

"[T]o convict the defendant of criminal trespass in the first degree [under § 53a-107 (a) (1)], the state [had] to prove beyond a reasonable doubt the following essential elements of that offense: (1) that the defendant, knowing he was not privileged or licensed to do so, entered or remained in a building [or any other premises]; and (2) that the defendant committed that act after an order to leave or not to enter had been personally communicated to him by the owner or other authorized person." (Internal quotation marks omitted.) *State* v. *Kinchen*, 243 Conn. 690, 702–703, 707 A.2d 1255 (1998); see *State* v. *Gemmell*, 151 Conn. App. 590, 598–99, 94 A.3d 1253, cert. denied, 314 Conn. 915, 100 A.3d 405 (2014). In the present case, the defendant challenges the sufficiency of the evidence as to both elements.

We first consider the evidence that an owner or other authorized person personally communicated to the defendant an order that she not enter the property.

During trial, R.G. testified that he did not want the defendant coming to his residence and that he had communicated this to her many times. He also testified that he had asked the police on numerous occasions to tell the defendant to not go to his residence. R.G. also stated that, although he initially had no issue with the defendant picking up their son at his home, problems developed, and he, then, insisted that she pick up their son down the street, at the home of their son's friend. T.P. also testified that she previously told the defendant not to be on the property and that she asked the police to tell her also.

Detective Steven Viele of the West Haven Police Department testified that, on May 18, 2010, he was called to the property for an unwanted person complaint. Viele stated that when he arrived, he met with T.P., who complained that the defendant had been at the property. T.P. asked Viele to contact the defendant to tell her to stay away from the property, and Viele telephoned the defendant, warning her not to come back to the property. Specifically, Viele testified that he "told [the defendant] of the complaint, and stated that, based on the fact that we believe she was . . . advised to stay away from the home prior, that I was giving her warning not to come to the home or to harass the family."[2]

West Haven police Officer Scott Vitelli testified that on July 2, 2010, he was dispatched to the property, where he encountered T.P. and the defendant, along with two other officers. T.P. told Vitelli that she did not want the defendant there and that she did not want her to return to the property. Vitelli further testified that T.P. then asked him to instruct the defendant not to return to the property, and Vitelli instructed the defendant accordingly. He further stated that he told the defendant to leave and "not to come back . . . ."

Finally, and perhaps most significantly, the defendant gave testimony showing that she had been told not to go to the residence. In particular, she testified during cross-examination that T.P. told her that she did not want her there. She also testified that R.G. told her not to go to his residence.

Viewing this evidence in the light most favorable to upholding the verdict, as we must, we conclude that there was sufficient evidence for the jury to conclude, beyond a reasonable doubt, that an owner or other authorized person personally communicated to the defendant an order that she not enter the property.

We next consider whether there was sufficient evidence that the defendant knew that she was not privileged or licensed to enter the property. As expressed previously, several people personally communicated to the defendant that she was not to enter the property. The defendant, although denying that the police specifi-

cally told her not to return to the property, admitted that R.G. and T.P. told her not to go to the property. Additionally, she stated: "Of course, they don't want me there . . . ."

Nevertheless, during trial, the defendant opined that because she had reasonable rights of visitation with her son, she had "a license and a privilege as a normal human being and mother, and guardian [to go to the property] . . . ." On the basis of the record, we conclude that there was sufficient evidence for the jury to conclude, beyond a reasonable doubt, that the defendant knew that she was not privileged to enter the property.

II

The defendant next claims that the court improperly declined to instruct the jury that the infraction of simple trespass is a lesser included offense of criminal trespass. Specifically, the defendant argues: "The trial court wrongly declined to give [an instruction on simple trespass], finding that the second prong of the *Whistnant* test[3] was not satisfied because simple trespass has an element not found in criminal trespass [in the first degree]. The court erroneously interpreted the phrase in the simple trespass statute 'without intent to harm any property' as being an element of simple trespass. In fact, the phrase 'without the intent to harm any property' found in . . . § 53a-110a is not an element of that offense." (Footnote added.)

The state argues that an infraction cannot be a lesser included "offense" because an infraction is not an offense. The state further argues that, even if an infraction could be a lesser included offense, the infraction of simple trespass contains an element not found in the criminal offense of criminal trespass in the first degree, namely, that the defendant must have no intent to harm the premises when she enters.

After the parties submitted their briefs and attended oral argument, we requested supplemental briefs. First, we requested that the parties address what effect, if any, *State* v. *Menditto*, 315 Conn. 861, 110 A.3d 410 (2015) (discussing, in part, various categories of illegal conduct, including crimes, offenses, violations and infractions), had on their arguments in this appeal. Both parties essentially agreed that *Menditto* had no effect.[4] We then asked the parties to address whether the defendant had prompted, induced or otherwise encouraged the court to decline to give a lesser included offense instruction on simple trespass. In her supplemental brief, the defendant argues that counsel did not prompt, induce or otherwise encourage the court to decline the request for a charge on simple trespass as a lesser included offense to criminal trespass in the first degree. She also argues that "defense counsel never equivocally or unequivocally expressed any intention to abandon

the request for a lesser included offense." In its supplemental brief, the state argues that defense counsel had prompted and induced the court to decline to give such an instruction. We conclude that this claim is not reviewable.

The following additional facts inform our conclusion. On October 28, 2013, the defendant's attorney submitted to the trial court a written request that the court charge the jury on simple trespass as a lesser included offense to criminal trespass in the first degree. In the written request to charge, defense counsel asked that the court give the following charge:

"The defendant is charged in the information with criminal trespass first degree in violation of Connecticut General Statutes § 53a-107.

"(Instruction on elements of greater offense.)

"If you have unanimously found the defendant not guilty of the crime of criminal trespass first degree, you shall then consider the lesser included offense of simple trespass in violation of Connecticut General Statutes § 53a-110a. Do not consider this offense unless and until you have unanimously acquitted the defendant of criminal trespass first degree.

"(Instruction on elements of lesser included offense of simple trespass.)

"Authority: Criminal jury instruction 2.11-2, state of Connecticut Judicial Branch website. *State* v. *Whistnant*, [179 Conn. 576, 427 A.2d 414 (1980)] . . . ." In this written request to charge, defense counsel did not set forth the elements of the purported lesser included offense of simple trespass or give the court the precise language he was requesting for an instruction.[5]

At the close of evidence the next day, the following colloquy occurred during the on-the-record charging conference:

"The Court: All right. Back on the record. Where the additional issue of the request to charge on a lesser included . . . .

"[Defense Counsel]: Yes, Your Honor, we had—

"The Court: I don't find any charge on that. Did you find a charge on that?

"[Defense Counsel]: I didn't, Your Honor, and all I can submit to the court is that—that the jury can be instructed on § 53a-110a, simple trespass. And the reason why we claim it, Your Honor, the *Whistnant* test is obviously our test as [to] whether or not—

"The Court: I'm just not sure of that, at this point. . . .

"[Defense Counsel]: So, going through the *Whistnant* criteria, Your Honor . . . number one, that the instructions requested by either the state or the defendant, we did request it. Number two, it's required that it is not

possible to commit the greater offense . . . [i]n other words, trespass in the first degree . . . [w]ithout having first committed the lesser offense.

"The Court: And the elements of the lesser offense, because I didn't—just for the record . . . it's not placing blame . . . I don't have any proposed instruction. I just have that you said, give an instruction . . . . [S]o, you're going to have to prepare an instruction for the court. . . .

"[Defense Counsel]: Oh, okay. Would you—if Your Honor would consider it. Should I—

"The Court: Well, what I think I had said earlier is that—I mean—I don't know until your proposed instruction, if it's—and I haven't looked at whether it is truly a lesser included [offense]. Your argument is that it is because there's only one element to prove?

"[Defense Counsel]: *The elements are*—is just knowing that she is not licensed or privileged to do so, she enters any premises without intent to harm any property. That's—I'm just reading the statute.

"The Court: Yes, but that's more than one element.

"[The Prosecutor]: And there's a different . . . element as well in simple trespass.

"The Court: . . . about harm to property.

"[The Prosecutor]: Right. Which is not included in the criminal trespass in the first degree.

"The Court: Yes, that's what I'm thinking. . . . And that's why I'm trying to distinguish between there's more than one element there. *One has to* [*trespass*] *without* [*the intent to*] *caus*[*e*] *harm to property, which is not in the criminal trespass in the first degree, correct*?

"[Defense Counsel]: *That's right. That's true.*

"The Court: You would have to agree with that.

"[Defense Counsel]: Although it could be implied.[6]

"The Court: All right. I'm going to decline giving the lesser included. I'll make a finding that it is a different element that is not included in the criminal trespass in the first degree. So, that takes care of that issue." (Emphasis added; footnote added.)

The defendant never raised this issue again before the trial court, never took an exception on this issue to the charge given, and filed no motion to set aside on the ground that the court improperly failed to give the requested instruction.

On the basis of our review of the record, we conclude that when defense counsel agreed with the trial court that simple trespass contained an element not found in criminal trespass in the first degree, he prompted the court to deny the requested instruction, and essentially

conceded that the purported lesser included offense failed under the second prong of the *Whistnant* test. See footnote 2 of this opinion.

In addition, although the defendant, on appeal, argues that the lack of intent to harm property is not an element of the simple trespass statute that must be proven by the state, defense counsel did not make such an argument before the trial court. We thoroughly have reviewed the record and are unable to find a single instance where defense counsel made such an argument to the trial court, and the defendant has not cited to any such instance in her appellate briefs.

"[A] party cannot take a path at trial and change tactics on appeal." *Moran* v. *Media News Group, Inc.*, 100 Conn. App. 485, 501, 918 A.2d 921 (2007). "Both our Supreme Court and this court have stated the principle that, when a party abandons a claim or argument before the trial court, that party waives the right to appellate review of such claim because a contrary conclusion would result in an ambush of the trial court. . . . [W]aiver is [t]he voluntary relinquishment or abandonment—express or implied—of a legal right or notice. . . . In determining waiver, the conduct of the parties is of great importance. . . . [W]aiver may be effected by action of counsel. . . . When a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal. . . . Thus, [w]aiver . . . involves the idea of assent, and assent is an act of understanding." (Internal quotation marks omitted.) *State* v. *Reddick*, 153 Conn. App. 69, 85, 100 A.3d 439, appeal dismissed, 314 Conn. 934, 102 A.3d 85, and cert. denied, 315 Conn. 904, 104 A.3d 757 (2014).

Moreover, "[t]his court routinely has held that it will not afford review of claims of error when they have been induced." (Internal quotation marks omitted.) *State* v. *Grant*, 149 Conn. App. 41, 57, 87 A.3d 1150, cert. denied, 312 Conn. 907, 93 A.3d 158 (2014). "As we previously have explained, the term induced error, or invited error, has been defined as [a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the [alleged] erroneous ruling. . . . It is well established that a party who induces an error cannot be heard to later complain about that error. . . . This principle bars appellate review of induced nonconstitutional error and induced constitutional error." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Brunetti*, 279 Conn. 39, 59 n.32, 901 A.2d 1 (2006), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007). "The invited error doctrine rests [on principles] of fairness, both to the trial court and to the opposing party." (Internal quotation marks omitted.) *State* v. *Grant*, supra, 57.

Here, whether we call it induced error, encouraged

error, waiver, or abandonment, the result—that the defendant's claim is unreviewable—is the same. Indeed, we are persuaded that defense counsel prompted the claimed error when he agreed with the court that there was an additional element in simple trespass that was not present in criminal trespass in the first degree. And, after indicating such an agreement, defense counsel did not raise the issue before the trial court again; he did not provide the court with the language of a proposed charge; he did not provide facts or law to support such a charge; he did not take an exception to the charge that was given; and, he did not file a motion to set aside. Viewing the entirety of the record, we conclude that the defendant's claim of instructional error is not reviewable.

## III

The defendant next claims that the court improperly admitted certain testimony of West Haven police Officer Christopher Nolan, which she claims involved prior misconduct. Specifically, she argues that the court abused its discretion in admitting Nolan's testimony (1) that the defendant had made false allegations that R.G. and T.P. had abused her son, and (2) that the defendant had admitted to him that she had gone to the property to see her son fourteen months prior to this incident.[7] The defendant claims that this evidence involved prior misconduct, and that it was not probative of the intent element of criminal trespass in the first degree and that it was highly prejudicial. We disagree.

The following additional facts inform our review. The state called Nolan to the witness stand and began direct examination of him. When the prosecutor asked Nolan to direct his attention to July 3, 2010, and whether he had occasion to meet with the defendant that evening, the defendant objected and asked the court to excuse the jury. With the jury out of the courtroom, the defense attorney argued that he believed that Nolan would be "getting into very dangerous territory . . . in terms of uncharged misconduct." The court asked for a proffer, and the following colloquy took place:

"[The Prosecutor]: Where did you meet with the defendant . . . on July 3, 2010?

"[Nolan]: At the lobby of the police department.

"Q. Okay. And how did that come about?

"A. I was dispatched there for an unwanted person complaint. . . .

"Q. Okay. And specifically, what happened when you arrived? Did you arrive at the police department?

"A. I did. Prior to arriving, they advised me that [the defendant] was there trying to make a complaint regarding an incident on—at [the property]. . . .

"Q. Okay. What was the complaint?

"A. That she wanted to go visit her son, and that she was threatened by the residents there, so she came to the police department to make a complaint.

"Q. Okay. Did you speak with her?

"A. I spoke with her, and she had the same allegations—that she went to go visit her son, and he's being abused, and same complaints that she normally has when she calls the police department.

"Q. Okay. And how did you respond to her complaint?

"A. I told her that she can't come and try and make the same complaints that she—of abuse that she alleges every time because every time she contacts the police department about her son being abused, and each time we would go and check, and her son is fine. And so I advised her that she cannot keep coming and making false complaints.

"Q. Okay. What, if anything, else did you advise her about [the property]?

"A. I advised her not to return there, and I believe she told me she can go there if she feels like it to see her son. I said that the only time she can return there is if her son wants her there . . . because a lot of times she goes there uninvited, and that's how these issues have happened."

The court then asked defense counsel to state his objection, and the following colloquy occurred:

"[Defense Counsel]: Your Honor, we're getting into the can of worms of uncharged misconduct here.

"The Court: Well, first of all, I'm not so sure it's misconduct. . . .

"[Defense Counsel]: And, Your Honor, this could lead to obviously other prejudicial evidence or testimony that is brought forth regarding my client [that] has nothing to do with the case at hand. . . . This witness is offered, as I understand it, for determination of whether or not he gave prior notice to [the defendant] not to set foot on the property. If he wants to testify to that effect, fine. If he's going to get into the circumstances of how that came about, we would indicate that this is probative of nothing, and highly prejudicial to my client, and we would ask that anything surrounding, other than the bare bones, the facts and circumstances of when this witness gave—claims he gave prior notice to my client, it's not only irrelevant, but it's highly prejudicial, and it is not probative of the issue that this witness is offered for, which was simply giving prior notice to her.

"The Court: All right. What's the state offering it for?

"[The Prosecutor]: Your Honor, one of the aspects that the state has to prove is intent to go to the property. Obviously, her mental state is going to be at issue in terms of whether . . . she believes that she has to fol-

low . . . directions from the police officers, Your Honor."

The state conceded that this was prior misconduct evidence[8] but argued that it was being offered to show the defendant's intent when returning to the property. The court then discussed with defense counsel whether intent related to the defendant's affirmative defense that she believed she had a license or privilege to go onto the property on September 19, 2011. The court then stated: "So, in fact, it does go to the intent. It goes to whether or not she could reasonably have believed.

"[Defense Counsel]: Right. If he's—you know, if we're leading to a situation where this witness is going to testify that she's in an unrelated arrest and accused of some other circumstances, some other—

"The Court: Well, the arrest, I'm not going to—they're not offering the arrest.

"[Defense Counsel]: Right."

The court then clarified with the prosecutor that it would not allow him to get into the defendant's other arrest, and it ruled that Nolan's testimony would be permitted "to prove intent as it does go to the elements of that state's offense, which is prior notice. It does go to that. And it also goes to the affirmative defense[9] that [the defendant] had a reasonable belief [that] she had a license or reason to be on the property. So, it is admissible for those purposes." (Footnote added.) Following the court's ruling, the jury returned, and Nolan testified, in relevant part, in accordance with the proffer. The defendant claims that the court abused in discretion in allowing this testimony.

"Evidence of a defendant's uncharged misconduct is inadmissible to prove that the defendant committed the charged crime or to show the predisposition of the defendant to commit the charged crime. . . . Exceptions to this rule have been recognized, however, to render misconduct evidence admissible if, for example, the evidence is offered to prove intent, identity, malice, motive, a system of criminal activity or the elements of a crime. . . . To determine whether evidence of prior misconduct falls within an exception to the general rule prohibiting its admission, we have adopted a two-pronged analysis. . . . First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of the other crime evidence. . . . Since the admission of uncharged misconduct evidence is a decision within the discretion of the trial court, we will draw every reasonable presumption in favor of the trial court's ruling. . . . We will reverse a trial court's decision only when it has abused its discretion or an injustice has occurred." (Internal quotation marks omitted.) *State* v. *Kalil*, 314 Conn. 529, 539–40, 107 A.3d 343

(2014). "In general, abuse of discretion exists when a court could have chosen different alternatives but has decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors." (Internal quotation marks omitted.) *State* v. *Jacobson*, 283 Conn. 618, 627, 930 A.2d 628 (2007).

Nevertheless, even if the trial court abused its discretion in admitting evidence of prior misconduct, "the defendant bears the burden of demonstrating that the [impropriety] was harmful. . . . [A] nonconstitutional [impropriety] is harmless when an appellate court has a fair assurance that the [impropriety] did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Boyd*, 295 Conn. 707, 743, 992 A.2d 1071 (2010), cert. denied, 562 U.S. 1224, 131 S. Ct. 1474, 179 L. Ed. 2d 314 (2011).

The defendant argues that the evidence of prior misconduct, namely, her repeated false abuse complaints involving her son, "should not have been admitted to show intent, even though both incidents involved the same complainants. There is no logical relationship between the false abuse complaints described by Nolan and the 'knowing' element of the alleged trespassing. In other words, the abuse complaints [the defendant] allegedly made do not provide any insight into whether . . . [she] knew she [was] 'not licensed or privileged to' enter or remain at [the property]." She also argues that Nolan's testimony that she admitted having gone to see her son on July 2, 2010, should not have been admitted because "the statement does nothing to prove the elements of notice or of 'knowing,' nor does it disprove [the defendant's] defense." She further argues that "her purported action in routinely making false abuse allegations about the complainants would certainly arouse the jury's sympathy toward them and change the whole complexion of the case."

In response, the state argues that the evidence properly was admitted to show intent and knowledge, and, even if the court abused its discretion in permitting Nolan's testimony, the defendant has failed to prove that the testimony was harmful. We do not reach the question of whether the court improperly admitted the challenged portion of Nolan's testimony because we agree that the defendant has failed to show that the admission of the evidence was harmful.

"[W]hether [the improper admission of a witness' testimony] is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of

the [improperly admitted] evidence on the trier of fact and the result of the trial. . . . The defendant has the burden of showing that admission of the evidence was harmful." (Citation omitted; internal quotation marks omitted.) *State* v. *Zachary F.*, 151 Conn. App. 580, 585–86, 95 A.3d 563, cert. denied, 314 Conn. 919, 100 A.3d 851 (2014).

In the present case, Nolan's testimony regarding his July 3, 2010 interaction with the defendant, specifically, his testimony concerning the defendant's prior false allegations of abuse toward her son and his statement that the defendant told him that she had been to the property prior to going to the police station were not important to the state's case, and we are not persuaded that these statements had any impact on the jury. The important aspect of Nolan's testimony was his statement that he specifically told the defendant during their July 3, 2010 interaction not to return to the property uninvited.

Additionally, we note that before Nolan testified in this case, T.P. already had testified that the defendant went to the property on May 18, 2010, leaving a note for her son, and that, in response, she called the police and asked them to tell the defendant not to return to the property. T.P. further testified that the defendant again went to the property on July 2, 2010, prompting her to make another call to the police, requesting again that they tell the defendant not to be on the property. Moreover, the defendant testified that she went to the property on July 2, 2010, and that she went to the police station on July 3, 2010, asking the police to conduct a well-child check on her son, but that the police "brutalized [her] outside the door of the . . . police department . . . with no rhyme, cause, or reason."

As fully set forth in part I of this opinion, wherein we examined the sufficiency of the evidence, the state's case, here, was strong, and the evidence in question is entirely consistent with the desire of R.G. and T.P. not to have the defendant on the premises. The admission of the contested portions of Nolan's testimony, even if improper, was not harmful.

IV

The defendant's final claim on appeal is that the court gave an improper instruction to the jury on the elements of order and knowledge.[10] The defendant concedes that this issue was not preserved, but asks that we review the claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[11] or that we invoke the plain error doctrine pursuant to Practice Book § 60-5. In response, the state contends that the defendant implicitly waived this claim under *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011), because defense counsel had been given an opportunity to review and comment on the court's proposed instruc-

tions and, other than making requests with which the court agreed, had no objection to the proposed instructions. In the alternative, the state contends that the court properly instructed the jury. Although we are not persuaded that the defendant implicitly waived this claim,[12] we, nevertheless, conclude that it is not reasonably possible that the jury was misled by the challenged instructions, and, therefore, the claim fails under the third prong of *Golding*.

"[I]t is, of course, constitutionally axiomatic that the jury be instructed on the essential elements of a crime charged. . . . If justice is to be done in accordance with the rule of law, it is of paramount importance that the court's instructions be clear, accurate, complete and comprehensible, particularly with respect to the essential elements of the alleged crime that must be proved by the government beyond a reasonable doubt . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *LaFleur*, 307 Conn. 115, 125, 51 A.3d 1048 (2012).

"The standard of review for claims of instructional impropriety is well established. [I]ndividual jury instructions should not be judged in artificial isolation . . . but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . In other words, we must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury. . . . A challenge to the validity of jury instructions presents a question of law over which [we have] plenary review." (Citation omitted; internal quotation marks omitted.) *State* v. *Santiago*, 305 Conn. 101, 190–91, 49 A.3d 566 (2012), supplemented and judgment superseded by *State* v. *Santiago*, 318 Conn. 1,      A.3d      (2015).

"[T]o convict the defendant of criminal trespass in the first degree [under § 53a-107 (a) (1)], the state [had] to prove beyond a reasonable doubt the following essential elements of that offense: (1) that the defendant, knowing [s]he was not privileged or licensed to do so, entered or remained in a building [or any other premises]; and (2) that the defendant committed that act after an order to leave or not to enter had been personally communicated to [her] by the owner or other authorized person." (Internal quotation marks omitted.)

*State* v. *Kinchen*, supra, 243 Conn. 702–703.

The defendant claims that the court improperly instructed the jury on the elements of knowledge and order. She argues that the actual instructions given by the court "did not go far enough because the court did not explain to the jury that [the] order must be unequivocal and leave no room for doubt." She also argues that the court must "tell the jury that the communications must notify [the defendant] of the parameters of the directive, including the length of time the order will last and the consequences [the defendant] will face if she does not comply . . . [including that the order] must be express and unequivocal. It must be more than a suggestion. It must inform [the defendant] that she is not to enter any portion of the premises and if she does so she is committing a trespass and is subject to arrest." (Citations omitted.) Moreover, she argues, the court should have specifically defined the word "order" for the jury so that the jury could determine whether "the communications from the state's witnesses were actually orders or whether they were advice." We are not persuaded.

In this case, the court instructed the jury in relevant part: "The second element is 'knowledge.' The second element is that the defendant knew that she was not privileged to [be on the premises]. A person acts knowingly with respect to conduct or circumstances when she is aware that her conduct is of such nature, or that such circumstances exist. It is defined that a person acts knowingly with respect to conduct to a circumstance described by a statute defining an offense when she is aware that her conduct, again, is of such nature or that such circumstance exists. An act is done with knowledge if done voluntarily and purposely, and not because of mistake, inadvertence, or accident.

"Ordinarily, knowledge can be established only through an inference from other proven facts and circumstances. The inference may be drawn if the circumstances are such that a reasonable person of honest intention, in the situation of the defendant, would have concluded that she was not allowed on the premises. The determinative question is whether the circumstances in this particular case form a basis for a sound inference as to the knowledge of the defendant in the transaction under inquiry."

"Now, the third element that the state must prove beyond a reasonable doubt is that the defendant had been ordered not to enter, and that the order had been personally communicated to the defendant by the owner or authorized person.

"So, in conclusion, the state must prove beyond a reasonable doubt that (1) the defendant entered the premises . . . (2) that the state must prove beyond a reasonable doubt that she knew that she was not

licensed or privileged to do so; and (3) the state must prove beyond a reasonable doubt that an order to not enter the premises . . . had been personally communicated to her by any of the following: [T.P., R.G.] or by members of the . . . police department, including Detective Viele, Officer Vitelli, or Officer Nolan.''

The definitions of knowledge and order given by the court in this case are consistent with the definitions set forth in our online criminal jury instructions; see Connecticut Criminal Jury Instructions (Rev. to 2007) instruction 9.4-1, available at http://jud.ct.gov/JI/Criminal/part9/9.4-1.htm (last visited September 25, 2015); and are generally consistent with the definitions set forth in D. Borden & L. Orland, 5A Connecticut Practice Series: Criminal Jury Instructions (4th Ed. 2007) § 12.3, pp. 324–27. See *State* v. *Ebron*, 292 Conn. 656, 688 n.27, 975 A.2d 17 (2009) ("[w]hile not dispositive of the adequacy of the [jury] instruction, an instruction's uniformity with the model instructions is a relevant and persuasive factor in our analysis" [internal quotation marks omitted]), overruled in part on other grounds by *State* v. *Kitchens*, 299 Conn. 447, 472–73, 10 A.3d 942 (2011); *State* v. *Sanchez*, 84 Conn. App. 583, 592 n.10, 854 A.2d 778 (same), cert. denied, 271 Conn. 929, 859 A.2d 585 (2004). Our reading of the court's instructions reveals no error. The charge, taken as a whole, fully instructed the jury regarding the elements of criminal trespass in the first degree. We conclude, therefore, that it is not reasonably possible that the jury was misled by the challenged instructions.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant and R.G. never married.

[2] We note that the defendant's brief misquotes this testimony as providing, in relevant part, that Viele stated: " 'I was giving her warning not to come to the home *to harass the family*.' " (Emphasis in original.) The transcript clearly reveals that Viele stated that he gave the defendant a warning "not to come to the home *or* to harass the family." (Emphasis added.)

[3] See *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980) ("[a] defendant is entitled to an instruction on a lesser offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser").

[4] Because we conclude that the defendant's claim is not reviewable, we need not determine what effect, if any, *Menditto* has on the issue of whether an infraction can be a lesser included offense.

[5] We note, without actually deciding, that the defendant's request to charge may not comply fully with Practice Book § 42-18. "It is well settled that . . . [a] proposed instruction on a lesser included offense constitutes an appropriate instruction for purposes of the first prong of *Whistnant* if it complies with Practice Book [§ 42-18]. . . . We previously . . . held, in the context of a written request to charge on a lesser included offense, [that the] requirement of [§ 42-18] is met only if the proposed request contains such a complete statement of the essential facts as would have justified the court in charging in the form requested. . . . *State* v. *Jones*, 289 Conn. 742,

759, 961 A.2d 322 (2008); see also Practice Book § 42-18." (Internal quotation marks omitted.) *State* v. *Marsha P.*, 126 Conn. App. 497, 505, 11 A.3d 1164 (2011).

The request to charge in this case simply set forth that the defendant was requesting a charge on § 53a-110a, to the effect that the infraction of simple trespass was a lesser included offense to criminal trespass in the first degree. We note that neither this court nor our Supreme Court has decided whether an infraction may be considered a lesser included offense. Nevertheless, during its colloquy with counsel, the court appeared to be willing to consider whether this infraction could be considered a lesser included offense. The defendant's request, however, contained no facts, no authority, and no proposed instruction that defense counsel wanted the court to give to the jury. Indeed, at no point did defense counsel prepare an instruction for the court to consider. Thus, under these circumstances, it is entirely unclear what instruction the defendant wanted the trial court to give. In this appeal, we still are unaware of what language the proposed instruction would contain.

[6] It is unclear what counsel meant by, "[a]lthough it could be implied," and we decline to speculate.

[7] We note that the defendant also testified during cross-examination that she went to the property on July 2, 2010.

[8] The prosecutor acknowledged that the defendant had been arrested after the incident.

[9] The defendant had not yet withdrawn her affirmative defense. See footnote 10 of this opinion.

[10] The state filed proposed jury instructions with the trial court on October 25, 2013. The defendant did not file proposed jury instructions, except for a proposed instruction on her affirmative defense, which she later withdrew, and a request to charge on simple trespass as a lesser included offense, which the court denied. See part II of this opinion.

[11] Under *State* v. *Golding*, supra, 213 Conn. 233: "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis omitted; footnote omitted.) Id., 239–40; see *In re Yasiel R.*, 317 Conn. 773, 781,      A.3d      (2015) (modifying third prong).

[12] Our conclusion that the defendant did not implicitly waive this claim is based on the following events. After having gone over, page by page, its proposed jury instructions with counsel, the court recessed for the evening. The next morning, the court told counsel that the courthouse secretaries were preparing the final version of the jury charge, and that the instructions could be reviewed by counsel following final arguments. Counsel proceeded to give closing argument, after which, the court gave its final instructions to the jury. When the court excused the jury, it noted, on the record, that the final instructions had not been handed out to counsel as it had indicated would be done. Although the court then gave counsel some time to review the instructions at that time, and it agreed to clarify one aspect of the instructions at the request of defense counsel, the parties did not have the opportunity for the type of meaningful review that is required for a *Kitchens* type waiver.